SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Duquene Pierre** (A-86-13) (072859)

**Argued April 13, 2015 -- Decided December 17, 2015**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court reviews the denial of defendant Duquene Pierre's application for post-conviction relief (PCR), which is based on a claim of ineffective assistance of counsel in light of trial counsel's failure to present evidence that would have rebutted the State's theory and supported defendant's alibi.

At approximately 3:00 a.m. on March 20, 1994, several people were talking on the sidewalk outside a residence in Elizabeth, New Jersey. During their conversation, two cars sped down the street and stopped nearby. Several men emerged from the cars and began shooting at the group, killing and robbing one man and wounding another. Immediately following the shooting, several eyewitnesses identified three of the gunmen, all of whom were known associates of defendant. Defendant was arrested on April 15, 1994.

Defendant asserted that, at the time of the shooting, he was traveling to Florida to visit relatives. During a search of his car, officers found a speeding ticket identifying the cited driver as defendant and listing his address. The ticket was issued at 11:34 p.m. on March 19, 1994, in Yemassee, South Carolina, almost four hours before the March 20 shooting and almost 800 miles from Elizabeth.

Defendant and his codefendants were indicted on several charges, including first-degree purposeful or knowing murder. Multiple witnesses identified the codefendants, but only one placed defendant at the scene, having first identified him in a photo array ten months after the shooting. Defendant did not testify, relying instead on two pieces of evidence: (1) the South Carolina speeding ticket, and (2) a portion of a phone bill from defendant's girlfriend, Yashonda Reid, reflecting a collect call from South Carolina at 12:32 a.m. the morning of the shooting.

Although the State focused on rebutting defendant's alibi by attempting to prove that it was defendant's brother, Kirby Pierre, and not defendant, who received the ticket in South Carolina and visited relatives in Florida, defendant's trial counsel did not present testimony from Kirby Pierre, defendant's sister Astrid Pierre, or the South Carolina officer who issued the speeding ticket. Additionally, he did not offer the remainder of Reid's March 1994 phone bill, which including several collect calls from defendant during the time period he claimed to be in Florida. Defendant was convicted of knowing and purposeful murder, felony murder, aggravated assault as a lesser included offense of attempted murder, armed robbery, and two weapons offenses. He was sentenced to a term of sixty years, with thirty-five years' parole ineligibility.

Pursuant to Rule 3:22-1, defendant filed a petition for post-conviction relief (PCR), alleging ineffective assistance of counsel because, despite his request, counsel did not call four of his Florida relatives as alibi witnesses. Although it held an evidentiary hearing, the court determined that defendant could not meet his burden to demonstrate prejudice as a result of counsel's handling of the case because of discrepancies between defendant's statement to police and his relatives' affidavits. Counsel admitted that he did not interview all of defendant's relatives, but asserted that defendant agreed that they should focus their defense on the ticket. Concluding that the relatives were not credible, their testimony could have undermined defendant's alibi, and counsel's failure to call them was a strategic decision, the court dismissed the PCR petition. The Appellate Division affirmed. This Court granted defendant's petition for certification and summarily remanded to the trial court for the presentation of testimony from "alibi-related witnesses." 189 N.J. 102 (2006).

On remand, the court heard the testimony of three of defendant's Florida relatives, who asserted that defendant, not Kirby Pierre, visited in March 1994. Construing the Court's remand as limited to the testimony of Florida relatives, the PCR court declined to permit testimony of Kirby and Astrid Pierre and Reid. It again denied defendant's petition based on its concerns about the relatives' credibility and its belief that trial counsel's conduct constituted strategy. The Appellate Division reversed, remanding for a further hearing to permit the testimony of additional witnesses.

The PCR court then conducted another evidentiary hearing at which Kirby Pierre testified that he did not

drive in 1994.  Astrid Pierre corroborated his testimony, asserting that Kirby was in New Jersey at the time of the shooting.  Reid testified that defendant lived with her in March 1994, and she did not see him between March 19 and March 26.  Moreover, she noted that several charges on her phone bill for that month reflected collect calls from defendant in Florida.  The PCR court again denied defendant's petition, citing "overwhelming evidence" that defendant did not receive the South Carolina ticket and again explaining that trial counsel's decision to rely on the ticket alone was sound strategy.  The court found that presentation of the additional testimony would not have altered the trial's outcome.

The Appellate Division affirmed in an unpublished opinion.  Acknowledging that counsel may not have adequately investigated potential witnesses, the panel nevertheless determined that it was unlikely defendant was prejudiced as a result.  The Court granted defendant's petition for certification.  217 N.J. 304 (2014).

**HELD:**  By virtue of the combined errors of his trial counsel, defendant was denied his constitutional right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution, and he is entitled to a new trial.

1.  Post-conviction relief in New Jersey is analogous to the federal writ of habeas corpus.  It is intended to provide a safeguard ensuring that a defendant is not unjustly convicted.  Factual findings that are supported by credible evidence are given deference by reviewing courts, while legal interpretations are reviewed de novo.  (pp. 18-20)

2.  Defendant's petition for PCR is premised upon his right to the effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution.  Under the two-prong test stablished by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by this Court in State v. Fritz, 105 N.J. 42, 58 (1987), a defendant must show, first, that counsel's performance was not objectively reasonable and, second, that absent counsel's errors there is a reasonable probability that the outcome of the trial may have been different.  (pp. 20-22)

3.  When assessing the reasonableness of counsel's performance under the first prong of the Strickland/Fritz test, there is a strong presumption in counsel's favor.  Review of trial counsel's strategic decisions regarding which witnesses to call to the stand must take into account the context of the State's case and the available evidence.  The Court defers to the PCR court's conclusion that defense counsel's testimony was credible and agrees that counsel's decision to assert an alibi defense based on the speeding ticket constituted sound strategy.  However, counsel's presentation of that alibi was deficient in two key respects.  First, counsel failed to present the testimony of Kirby or Astrid Pierre to rebut the State's assertion that Kirby, not defendant, received the ticket in South Carolina.  Second, counsel declined to develop or present evidence that could have supported defendant's assertion that, following the shooting, he stayed in Florida for several days to visit relatives.  Counsel's failure to interview defendant's Florida relatives as potential witnesses also fell short of professional norms.  Although the relatives could not have provided a definitive alibi for the night of the shooting, they could have testified that it was defendant, and not his brother, who visited them in late March 1994.  Because counsel's decision to forego evidence that could have reinforced defendant's alibi fell below the objective standard of reasonableness guaranteed by the United States and New Jersey constitutions, defendant met his burden with respect to the first Strickland/Fritz prong.  (pp. 22-29)

4.  Under the second Strickland/Fritz prong, a defendant must show that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Here, unlike his codefendants, there was sparse evidence implicating defendant in the shooting, and the State's evidence countering defendant's alibi was neither direct nor conclusive.  In this context, a fully-developed alibi defense, carefully constructed on defendant's behalf, likely would have given rise to reasonable doubt about his guilt and altered the outcome of his trial.  Defendant therefore met his burden with respect to the second Strickland/Fritz prong, demonstrating that counsel's errors were serious enough to undermine confidence in the fairness and outcome of the trial.  (pp. 29-37)

The judgment of the Appellate Division is **REVERSED**, defendant's conviction is **VACATED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

DUQUENE PIERRE,

    Defendant-Appellant.


        Argued April 13, 2015 - Decided December 17, 2015

        On certification to the Superior Court,
        Appellate Division.

        Linda Mehling, Designated Counsel, argued
        the cause for appellant (Joseph E. Krakora,
        Public Defender, attorney).

        Kimberly L. Donnelly, Assistant Prosecutor,
        argued the cause for respondent (Grace H.
        Park, Acting Union County Prosecutor,
        attorney; Sara B. Liebman, Assistant
        Prosecutor, of counsel and on the brief).

        Duquene Pierre submitted a letter brief pro
        se.


    JUSTICE PATTERSON delivered the opinion of the Court.

    In 1996, defendant Duquene Pierre was convicted of first-degree murder, first-degree felony murder, and several other offenses, arising from a fatal shooting in Elizabeth. Defendant was one of several suspects arrested for the shooting. He maintained that when the crime occurred at 3:19 a.m. on March

20, 1994, he and one of his codefendants were not in New Jersey, but on their way to Florida to visit defendant's relatives.

After defendant's arrest, police officers found a speeding ticket in his car. The ticket indicated that it was issued by a police officer in Yemassee, South Carolina at 11:34 p.m. on March 19, 1994, less than four hours before the shooting in Elizabeth. It identified defendant as the driver whose vehicle exceeded the speed limit, and described a car closely matching defendant's vehicle.

At trial, the State contended that it was not defendant, but his brother Kirby Pierre, who was pulled over for speeding in South Carolina in the hours preceding the shooting. The State suggested that Kirby Pierre used defendant's car and driver's license to travel to Florida, and that the South Carolina officer mistakenly wrote defendant's name and address on the ticket issued to his brother. Defendant's trial counsel presented the testimony of defendant's girlfriend, Yashonda Reid, and offered into evidence an excerpt from her telephone bill to demonstrate that defendant placed a call from South Carolina to Reid about three hours before the shooting in Elizabeth. Trial counsel, however, did not present the testimony of Kirby Pierre or other witnesses to support defendant's alibi. Defendant was convicted of several charges

2

and sentenced to an aggregate term of sixty years' incarceration, and his conviction and sentence were affirmed.

This appeal arises from the denial of defendant's application for post-conviction relief (PCR), based on a claim of ineffective assistance of counsel at trial. In evidentiary hearings before the PCR court, defendant presented evidence that, if called to testify, his brother Kirby Pierre and sister Astrid Pierre would have stated that in March 1994, Kirby did not know how to drive and did not travel to Florida. Defendant also presented evidence that the remainder of Reid's telephone bill, not offered into evidence at trial, would have supported his contention that he was in Florida in the days that followed the Elizabeth shooting. Finally, three of defendant's relatives testified that defendant visited each of them in Florida in March 1994, but defendant's trial counsel did not contact them to ascertain their knowledge of those visits. The PCR court denied defendant's PCR application, and the Appellate Division affirmed that determination.

We conclude that, at his trial, defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution. Strickland v. Washington, 466 U.S. 668, 685-89, 104 S. Ct. 2052, 2063-65, 80 L. Ed. 2d 674, 692-94 (1984); State v. Fritz, 105 N.J. 42, 58

3

(1987).  The record before the PCR court establishes that defendant's trial counsel did not present evidence that would have both rebutted the State's theory regarding the South Carolina speeding ticket and supported defendant's alibi. Defendant has overcome the presumption that his trial counsel exercised reasonable professional judgment and developed a sound trial strategy.  Strickland, supra, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694-95; Fritz, supra, 105 N.J. at 52. In light of the inconclusive evidence presented against defendant at trial and the potential impact of his alibi, had that alibi been fully developed before the jury, defendant has also demonstrated that counsel's errors prejudiced the defense and denied him a fair trial.  Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; Fritz, supra, 105 N.J. at 60-61.

Accordingly, we reverse the judgment of the Appellate Division, vacate defendant's conviction, and remand this matter to the trial court for a new trial.

## I.

### A.

At approximately 3:00 a.m. on March 20, 1994, several young men and women were gathered outside a residence on Magnolia Avenue in Elizabeth.  The house was shared by Belinda Myers, her sister Gwen Myers, and a third resident.  In addition to the

women who lived in the house, the group included Kim Minus, her boyfriend Eddie Henderson, his cousin Karon Henderson, and three other men. The group was joined by two cousins of the Myers sisters, Jerry Myers and Jeff Dozier.

According to Minus's trial testimony, while she and the others stood on the sidewalk talking, two cars sped down the street and abruptly stopped at the gathering. Several men emerged from the two cars and began shooting at the group. Jerry Myers was robbed of his jewelry, shot, and killed. Karon Henderson was chased down the street by some of the assailants and was also shot, but survived.

In the immediate aftermath of the crime, several eyewitnesses identified the first gunman to emerge from the first car as MacGoohan Romelus. One witness identified the second gunman to emerge as Jean Dorval, and another witness identified the driver as James Jean Louis. Defendant was known to be an associate of Romelus, Dorval, and Louis, and was linked to them in photographs and documents discovered in the search of a Newark apartment shortly after the shooting. However, the trial record reveals no evidence that in the days and weeks following the incident, any witness present at the scene identified defendant as one of the men involved in the crime.

On April 15, 1994, defendant was arrested. That same day, Elizabeth police officers executed a search warrant authorizing

5

a search of defendant's 1986 Acura Legend. In the car, officers found a speeding ticket identifying the cited driver as "Pierre Duquene," and listing defendant's address. The ticket indicated that it was issued by a police officer, Captain Paul Barnett, at hour "2334" (11:34 p.m.) on Saturday, March 19, 1994, in Yemassee, South Carolina. It identified the vehicle stopped by the officer as a 1986 Acura with a "paper," or temporary, New Jersey license plate, a description that matched the vehicle owned by defendant and searched by Elizabeth police.

B.

A grand jury indicted defendant, Romelus, Dorval, and Louis, charging them with first-degree purposeful or knowing murder of Jerry Myers, N.J.S.A. 2C:11-3(a)(1), (2); first-degree attempted murder of Karon Henderson, N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:5-1(a)(1), (2), (3); felony murder of Jerry Myers, N.J.S.A. 2C:11-3(a)(3); first-degree armed robbery of Myers, N.J.S.A. 2C:15-1; possession of a gun for an unlawful purpose, N.J.S.A. 2C:39-4(a); and possession of a gun under circumstances not manifestly appropriate for lawful use, N.J.S.A. 2C:39-5(b).

Defendant was tried with two of his codefendants, Dorval and Louis.[1] The State's theory was that the shooting was

---

[1] Romelus, tried separately, was identified at his trial by three eyewitnesses as the first individual to emerge from the first vehicle and begin shooting at the victims. He was

6

motivated by an earlier shooting of a man who was a friend of all three defendants, that it was also prompted by Louis's desire for revenge against Gwen Myers, with whom he had been romantically involved, and that it was intended to intimidate the victims' friends.  The State presented the testimony of three eyewitnesses identifying Dorval, who asserted an alibi defense that he was traveling with defendant to Florida at the time of the crime.  The State also presented the testimony of two eyewitnesses identifying Louis, who had admitted to police that he was present at the scene.  Only one of the seven eyewitnesses who testified at trial, Minus, placed defendant at the scene.  She testified that she first identified defendant in a photo array ten months after the shooting.

In its case against defendant, the State primarily focused on rebutting his alibi.  It presented the testimony of Johnson, an acquaintance of defendant, who told the jury that she saw defendant and Dorval at her apartment in Elizabeth in the early morning hours of March 20, 1994.  The State also called as a witness a detective who had interviewed defendant about the South Carolina speeding ticket.  The detective recounted defendant's description of the South Carolina officer who,

---

acquitted of purposeful and knowing murder, but convicted of the remaining charges.

according to defendant, had pulled him over and issued him a speeding ticket.

Defendant did not testify.  In support of defendant's alibi, his trial counsel offered into evidence two exhibits, the South Carolina speeding ticket and a portion of Reid's telephone bill reflecting a collect call from South Carolina at 12:32 a.m. on March 20, 1994.  Defense counsel also presented the testimony of Reid.  She testified that defendant and Dorval left New Jersey between 10:00 a.m. and 11:00 a.m. on March 19, 1994, bound for Florida to visit defendant's uncle and cousins.  Reid identified the March 20, 1994 collect call on her telephone bill as a call from defendant, and testified that during that call, defendant told her about the speeding ticket.  According to Reid, defendant and Dorval did not return to New Jersey until March 31, 1994.  In its cross-examination of Reid, the State established that defendant's brother Kirby Pierre sometimes talked by telephone with Reid, that an observer might note a resemblance between defendant and his brother, and that Reid had failed to recall the content of her telephone call with defendant in a pretrial interview with police.

Defendant's trial counsel did not present the testimony of defendant's brother Kirby Pierre, his sister Astrid Pierre, or the South Carolina officer who issued the speeding ticket.  He

8

also did not offer into evidence the remainder of Reid's telephone bill for March 1994.

In rebuttal, the State called two officers who had interviewed defendant. Both testified about defendant's description of his claimed encounter with the South Carolina police officer. The State then presented the testimony of that officer, Captain Barnett. Captain Barnett was not asked whether defendant or Kirby Pierre was the driver to whom he had issued the speeding ticket on March 19, 1994. He testified that he did not recall the details of that particular traffic stop. The State asked Captain Barnett about his general procedures in traffic stops, his personal appearance in March 1994, and the police vehicle that he used at that time. Defense counsel cross-examined the South Carolina officer on those issues.

In his summation, defense counsel told the jury that Minus's testimony about defendant should be rejected due to her belated identification of defendant, and that Johnson was disoriented and incredible in her testimony. He stated the State's suggestion that Kirby Pierre, not defendant, had received the South Carolina speeding ticket was nothing more than speculation. In her summation, the prosecutor told the jury that it was Kirby Pierre, not defendant, who was issued the ticket, and that the collect call from South Carolina was not

made by defendant to Reid, but by Kirby Pierre in South Carolina to defendant at Reid's home in New Jersey.

The jury convicted defendant of knowing and purposeful murder, felony murder, aggravated assault as a lesser included offense of attempted murder, armed robbery, and both weapons offenses. The trial court denied defendant's post-conviction motion for a judgment of acquittal and sentenced defendant to sixty years' incarceration, with thirty-five years' parole ineligibility.[2] Defendant's conviction and sentence, and those of his codefendants, were affirmed by the Appellate Division. This Court denied certification. State v. Pierre, 162 N.J. 488 (1999).

## C.

Pursuant to Rule 3:22-1, defendant filed a petition for PCR. He claimed that he had asked his trial counsel to call four of his Florida relatives as alibi witnesses, and that his counsel failed to do so. In support of his petition, defendant

---

[2]  After merger of certain offenses, the court imposed a fifty-year term of incarceration, with a thirty-year period of parole ineligibility for the purposeful or knowing murder conviction. It also imposed a consecutive term of ten years' incarceration with a five-year period of parole ineligibility for the aggravated assault conviction, a concurrent term of twenty years' incarceration with a ten-year period of parole ineligibility for the armed robbery conviction, and a concurrent term of five years' incarceration for defendant's conviction for possession of a weapon under circumstances manifestly inappropriate for lawful use.

10

submitted virtually identical affidavits signed by four of his Florida relatives: his uncle Anoux Estime, his uncle Brinny Pierre, his sister Josiane Pierre, and his sister Serfise Pierre. Each Florida relative's affidavit stated that he or she recalled that "[o]n March 20, 1994," defendant visited the relative in Florida, that defendant stayed in Florida for about seven days, and that the relative had expected to be called by trial counsel to testify, but was never contacted.

At the initial oral argument of defendant's PCR petition, the PCR court ordered an evidentiary hearing, confined to the question whether trial counsel had departed from professional norms by failing to develop or present the testimony of the Florida relatives. At the commencement of that hearing, the PCR judge informed counsel that he had determined that defendant could not meet his burden to demonstrate prejudice as a result of his counsel's handling of his defense. The judge stated that he was prepared to dismiss defendant's PCR petition on that basis. He cited the discrepancy between defendant's statement to police that after arriving in Florida, he first contacted a relative on March 21, 1994, and the four relatives' affidavits stating that defendant's first contact with a relative in Florida occurred a day earlier, on March 20, 1994. The judge also noted that the four relatives represented that defendant stayed in their homes during his March 1994 visit to Florida,

11

but defendant had told police that he stayed in a Florida hotel. The PCR judge reasoned that the Florida relatives were not credible, and that their testimony could have undermined rather than supported defendant's alibi.

The PCR judge then heard testimony from defendant and his trial counsel regarding defendant's claim that counsel's performance failed to meet professional standards. Defendant and his trial counsel both testified that defendant instructed his counsel to contact the Florida relatives so that they could corroborate his account. Defendant's trial counsel testified that he contacted defendant's uncle, but concluded that the uncle's recollection of the timing of defendant's arrival in Florida was inconsistent with defendant's alibi based on the South Carolina traffic ticket, and that the uncle would not be a helpful witness. Conceding that a defense attorney should ordinarily interview all potential alibi witnesses, defendant's trial counsel told the PCR court that he did not contact defendant's other Florida relatives. He said that instead, he recommended to defendant that they focus on the speeding ticket as the foundation of his alibi defense. Defendant's trial counsel stated that defendant agreed to that plan.

Finding defendant's trial counsel credible, the PCR judge determined that defendant had not met his burden to demonstrate ineffective assistance of counsel, and dismissed the PCR

petition.  The judge concluded that with defendant's consent, trial counsel made a strategic decision to forego the testimony of a "string of relatives," whose recollection of dates diverged from the timeline of defendant's alibi defense, in favor of the testimony of the objective police officer who issued the speeding ticket in South Carolina.

The Appellate Division affirmed the PCR court's determination.  This Court granted defendant's petition for certification and summarily remanded to the trial court for an evidentiary hearing so that defendant could present the testimony of "alibi-related witnesses."  189 N.J. 102 (2006).

On remand, the PCR court heard the testimony of three of defendant's relatives who were residents of Florida: defendant's uncle Anoux Estime and sisters Josiane and Serfise Pierre.  The three relatives testified that in March 1994, defendant surprised them with a visit to their Florida homes and that defendant's brother Kirby Pierre had never visited them there.  Defendant's uncle testified that when he signed his affidavit, the date of March 20, 1994 was already set forth in the draft prepared for his signature.  Serfise Pierre testified that she remembered signing an affidavit confirming defendant's visit to Florida in March 1994, but not the exact date of the visit.  Josiane Pierre denied having signed an affidavit setting forth a specific date.

The PCR court declined to permit defendant to present the testimony of Kirby Pierre, Astrid Pierre, or Reid at the evidentiary hearing. It construed this Court's remand to be limited to the testimony of defendant's Florida relatives.

Following the hearing, the PCR court again denied defendant's petition for PCR, expressing substantial reservations about the Florida relatives' credibility. The court reiterated its prior holding that defendant's trial counsel made a strategic decision not to pursue an alibi premised on the testimony of those relatives.

The Appellate Division reversed the PCR court's determination, and remanded for a further hearing to permit defendant to present the testimony of additional witnesses.

The PCR court then conducted another evidentiary hearing. Defendant's brother Kirby Pierre testified that in March 1994, he did not know how to drive, was not licensed to drive, did not possess defendant's driver's license, and did not use defendant's car. Kirby Pierre also stated that he had expected to be a witness at trial because of the State's theory that he had driven defendant's car to Florida, and was excluded from the courtroom because of that possibility.[3] He asserted, however,

---

[3] Kirby Pierre was uncertain whether defendant's trial counsel or a court officer excluded him from the courtroom.

14

that he was never contacted by defendant's trial counsel regarding his potential testimony.

On cross-examination, Kirby Pierre initially denied, but then conceded, that he had been convicted of possession of a controlled dangerous substance. He also admitted inconsistencies between his testimony and an affidavit with respect to his activities in New Jersey on March 19, 1994, the day that the South Carolina speeding ticket was issued.

The State also offered into evidence a driver's abstract showing that Kirby Pierre was issued a driver's license three years after the events that gave rise to this case and a court record indicating that on February 23, 1994, a judge ordered a six-month license revocation as part of a sentence imposed on him for his drug offense.

Kirby Pierre's account was corroborated in part by the testimony of his sister Astrid, who told the PCR judge that she never saw Kirby drive a car during the eleven years in which they shared a home, and that Kirby did not leave New Jersey between March 19 and March 26, 1994. Astrid Pierre conceded that prior to defendant's trial, she did not share these details with defendant's trial counsel, for whom she worked as a receptionist at the time. She also qualified her prior statement that Kirby Pierre was home all day with her on March

15

19, 1994, the day that defendant claimed to have departed for Florida.

Finally, Reid testified before the PCR court that in March 1994, her home was defendant's primary residence, and that she did not see him between March 19, 1994 and March 26, 1994. She testified that several charges in her telephone bill for that month reflected collect calls from defendant in Florida. Reid conceded on cross-examination that she did not remember the day of the Elizabeth shooting and that she had little recollection of her testimony at defendant's trial.

Citing the State's presentation of "overwhelming evidence" that defendant was not the recipient of the South Carolina ticket, the PCR court again denied defendant's petition. The court reiterated its conclusion that defendant's trial counsel made a sound strategic choice when he declined to present the proposed testimony of defendant's Florida relatives and elected to rely instead on an alibi premised on the South Carolina speeding ticket. The PCR court reasoned that even if the testimony of Kirby and Astrid Pierre had been presented and believed by the jury, it would not have affected the trial's outcome. The court further determined that because the jury at defendant's trial was not persuaded by Reid's testimony that it was defendant who called her from South Carolina on March 20, 1994, evidence of subsequent collect calls that appeared on

16

Reid's telephone records would not have altered the result of defendant's trial.

In an unpublished opinion, the Appellate Division affirmed the PCR court's determination. The panel acknowledged that trial counsel's single call to one of defendant's Florida relatives may not have constituted an adequate investigation. It concurred with the PCR court, however, that it was unlikely that defendant consequently suffered prejudice. With respect to the testimony of Kirby Pierre, the corroborating testimony of his sister Astrid, and the presentation of evidence regarding Reid's telephone records, the panel reasoned that the alibi testimony elicited during the PCR proceedings would have been no stronger than that elicited at trial, and would have been more problematic.

We granted defendant's petition for certification. State v. Pierre, 217 N.J. 304 (2014).

## II.

Defendant disputes the PCR court's finding that his trial counsel's decision not to investigate potential witnesses living in Florida was strategic. He asserts that the State's evidence that someone other than defendant was the driver issued a ticket for speeding in South Carolina was weak. In defendant's view, that evidence would have been easily refuted had defendant's trial counsel presented the testimony of defendant's Florida

17

relatives and Kirby and Astrid Pierre, and offered evidence of all of the collect calls made to Reid in the days immediately following the shooting.  Defendant contends that this evidence would have supported, not undermined, his alibi based on the South Carolina speeding ticket.

The State asserts that, in accordance with the deference afforded to the factual findings of a PCR judge, this Court should affirm the judgment of the Appellate Division.  It contends that defendant's trial counsel made a sound strategic decision not to pursue testimony that the jury may have found incredible, and stresses that the Florida relatives could have not attested to defendant's whereabouts at the precise time of the shooting in Elizabeth.  The State discounts the potential impact of Kirby Pierre's testimony, arguing that the jury would have discounted his testimony because of his relationship with defendant, the drug conviction on his record, and his evasive and inconsistent statements.  It dismisses Reid's proffered testimony that defendant made several calls to her, noting that the jury evidently rejected her testimony regarding the one call that she discussed at trial.

III.

A.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus."  State v. Preciose, 129 N.J.

18

451, 459 (1992). It "provide[s] a built-in 'safeguard that ensures that a defendant [is] not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)). Among the four grounds for relief in a PCR proceeding is a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." R. 3:22-2(a); see also State v. O'Neil, 219 N.J. 598, 609 (2014); State v. Murray, 162 N.J. 240, 245 (2000).

In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard; it "will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." Nash, supra, 212 N.J. at 540 (citing State v. Harris, 181 N.J. 391, 415 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005)). Indeed, "[a]n appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he has observed firsthand." Ibid. However, a "PCR court's interpretation of the law" is afforded no deference, and is "reviewed de novo." Id. at 540-41 (citing Harris, supra, 181 N.J. at 415-16). "[F]or mixed questions of law and fact, [this Court] give[s] deference . . . to the supported factual findings of the trial court, but review[s] de novo the lower court's application of any legal rules to such

19

factual findings." Harris, supra, 181 N.J. at 416 (citing State v. Marshall, 148 N.J. 89, 185, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997)).

Defendant's petition for PCR is premised upon his right to the effective assistance of counsel in his criminal trial, guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution. U.S. Const. amend. VI; N.J. Const. art. I, para. 10. The constitutional guarantee is premised on the need "to protect the fundamental right to a fair trial." Strickland, supra, 466 U.S. at 684, 104 S. Ct. at 2063, 80 L. Ed. 2d at 691. "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. at 685, 104 S. Ct. at 2063, 80 L. Ed. 2d at 692. Access to the skill and knowledge of counsel "is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." Ibid. (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S. Ct. 236, 240, 87 L. Ed. 268, 273 (1942)). "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment." Ibid.

Given the constitutional mandate of a fair trial, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning

20

of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S. Ct. at 2064, 80 L. Ed. 2d at 692-93. In Strickland, supra, the United States Supreme Court established a two-pronged test for the determination of a defendant's claim that he or she was not afforded the effective assistance of counsel:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
>
> [Id. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693.]

Thus, Strickland, supra, requires a reviewing court to evaluate not only the performance of counsel, but to assess the impact of any deficiency in counsel's representation on the fairness of the defendant's trial. See ibid.

Adopting the Strickland standard for ineffective assistance of counsel claims based on Article 1, Paragraph 10 of the New Jersey Constitution, this Court has held that "if counsel's

21

performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's conviction, the constitutional right will have been violated." Fritz, supra, 105 N.J. at 58. Accordingly, "[t]he standard for establishing that a defendant was denied the effective assistance of counsel is the same under both the Federal and State Constitutions." O'Neil, supra, 219 N.J. at 610 (citing State v. Allah, 170 N.J. 269, 283 (2002)). That standard guides our analysis of this case.

B.

To satisfy the first prong of Strickland, supra, and Fritz, supra, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, 466 U.S. at 688, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; accord Fritz, supra, 105 N.J. at 58. The court weighs "whether counsel's assistance was reasonable considering all the circumstances." Strickland, supra, 466 U.S. at 688, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694. In that inquiry, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694. An attorney is entitled to "a strong presumption" that he or she provided reasonably effective assistance, and a "defendant must overcome the presumption that" the attorney's decisions followed a sound strategic approach to the case. See id. at 689, 104 S.

22

Ct. at 2065, 80 L. Ed. 2d at 694-95; State v. Savage, 120 N.J. 594, 617 (1990) ("If counsel thoroughly investigates law and facts, considering all possible options, his or her trial strategy is 'virtually unchallengeable.'" (quoting Strickland, supra, 466 U.S. at 690-91, 104 S. Ct. at 2065-66, 80 L. Ed. 2d at 695)).

In evaluating the performance of defendant's trial counsel, we must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, supra, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694. We recognize that "[d]etermining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront." State v. Arthur, 184 N.J. 307, 320 (2005). Our task is to fairly assess defendant's trial counsel's decisions in the context of the State's case against defendant and the strengths and weaknesses of the evidence available to the defense. In so doing, we defer to the PCR court's factual findings, including its finding that defense counsel's testimony at the PCR hearing, in which he addressed certain aspects of his trial strategy, was credible. See Nash, supra, 212 N.J. at 540; State v. Elders, 192 N.J. 224, 244 (2007); Harris, supra, 181 N.J. at 415.

23

From the early stages of this case, the defense strategy was to present an alibi. Following his arrest, defendant asserted that when the shooting occurred in Elizabeth at 3:19 a.m. on March 20, 1994, he was not at the scene, but driving with codefendant Dorval to Florida to visit his relatives. That alibi was supported by the speeding ticket issued by Captain Barnett in South Carolina almost four hours before the shooting, addressed to defendant, and describing a vehicle closely matching his car. As defendant's counsel testified before the PCR court, he considered the speeding ticket to be the most significant evidence available to defendant in support of his alibi, and attached a copy of the ticket to the notice of alibi served on the State. Indeed, a traffic citation issued by a South Carolina police officer to an individual identified as defendant -- seven hundred and fifty miles from Elizabeth and less than four hours before the shooting -- provided compelling support for defendant's alibi. The attorney's decision to assert an alibi defense based on the speeding ticket clearly constituted a sound strategic choice.

In the presentation of that alibi, however, defendant's trial counsel's performance was deficient in two significant respects. First, defense counsel did not present the testimony of Kirby or Astrid Pierre to rebut the State's assertion that it was Kirby Pierre, not defendant, who was issued a ticket in

24

South Carolina.  The State's theory regarding the South Carolina speeding ticket placed Kirby Pierre in a crucial role.  The State did not simply assert that the speeding ticket was issued to someone other than defendant.  Instead, it specifically claimed that it was Kirby Pierre who left New Jersey in defendant's car on a trip to Florida, presented defendant's license to Captain Barnett in South Carolina, called defendant's girlfriend Reid collect from Florida on March 20, 1994, and visited relatives in Florida over the several days that followed.[4]

The PCR record does not indicate whether defendant's trial counsel ever interviewed Kirby Pierre or investigated the possibility of presenting his testimony at trial; counsel was not asked about these issues during his testimony before the PCR court.  Accordingly, the PCR court's finding that defendant's trial counsel considered calling Kirby Pierre as a witness, but decided against that course as a matter of strategy, was not grounded in the evidence.  The record is similarly unclear as to whether Astrid Pierre, who lived with her brother Kirby in March

---

[4]  The PCR court's characterization of the State's position at trial -- that it "wasn't that [Kirby] was driving the car, but rather it was someone other than defendant, maybe [Kirby]" -- is inconsistent with the trial record.  In its presentation of evidence and summation, the State consistently maintained that Kirby Pierre, not an unidentified individual, was the driver to whom the South Carolina ticket was issued.

1994 and worked in defense counsel's office at the time of trial, was interviewed about Kirby's activities during the relevant period, or was considered as a possible witness.

Whether or not defendant's trial counsel ever contemplated calling Kirby Pierre or Astrid Pierre at trial, neither witness testified on defendant's behalf. The alibi based on the South Carolina speeding ticket, properly identified as defendant's strongest defense at trial, was unsupported by the testimony of these central witnesses. Defendant's trial counsel offered no evidence regarding Kirby Pierre's whereabouts during the last two weeks of March 1994. Without that evidence, the State's attack on defendant's alibi was essentially unrebutted.

Second, defense counsel declined to develop or present evidence that could have supported defendant's assertion that following the shooting, he stayed in Florida for several days to visit relatives. That evidence, in part, consisted of telephone records reflecting collect calls placed from Florida to defendant's girlfriend, Reid, over several days during that period.

Defense counsel offered into evidence an excerpt of Reid's telephone records, reflecting a collect call placed to her from Hardeeville, South Carolina at 12:32 a.m. on March 20, 1994. During Reid's direct examination at trial, defendant's trial counsel asked her about that call, and Reid testified that it

26

was a call from defendant. Defense counsel, however, chose not to introduce into evidence the remainder of Reid's telephone bill. Those additional pages reflected six collect calls to Reid from Florida, one on March 21, 1994, one on March 23, 1994, three on March 25, 1994, and one on March 26, 1994. Before the PCR court, Reid testified that defendant made these calls.

The telephone record showing six additional calls did not itself provide defendant with an alibi for the early hours of March 20, 1994, when the Elizabeth shooting occurred; defendant could have participated in the crime, traveled to Florida, and made the calls that appeared on Reid's telephone bill. However, that record and Reid's corresponding testimony would have supported defendant's alibi by placing defendant in Florida for several days following the issuance of the speeding ticket in South Carolina on March 19, 1994. It would have countered the State's contention that it was Kirby Pierre, not defendant, who called the home of defendant's girlfriend from South Carolina the night of the shooting in Elizabeth. By declining to present evidence of those calls, in the form of a telephone bill that was in his possession and the testimony of a witness already on the stand, defendant's trial counsel provided ineffective representation to his client.

Similarly, by virtue of his failure to interview defendant's Florida relatives as potential witnesses at trial,

27

defense counsel's representation fell short of professional norms. As defense counsel candidly told the PCR court, an attorney representing a criminal defendant should, as a general rule, interview all alibi witnesses. By dismissing the possibility of calling defendant's Florida relatives as trial witnesses after a telephone call with just one of them, defense counsel failed to pursue potentially relevant evidence. The record reveals that the Florida relatives were uncertain and inconsistent about the precise timing of defendant's visit to Florida, and thus were not in a position to provide defendant with a definitive alibi for the night of the shooting in Elizabeth. Those relatives, however, could have testified that it was defendant, not his brother Kirby, who visited Florida in late March 1994.

In short, the South Carolina alibi and the evidence of defendant's subsequent presence in Florida were not mutually exclusive, but consistent. Evidence that defendant was in Florida during the week after the crime could have supported -- not undermined -- the alibi premised on the South Carolina speeding ticket. Defense counsel had access to that evidence in the form of the telephone records, the testimony of Reid, and

28

the potential testimony of the Florida relatives.  Counsel declined to pursue or present that evidence.[5]

Thus, although defendant's trial counsel properly concluded that the South Carolina speeding ticket provided defendant with a promising alibi, counsel chose to forego evidence that could have reinforced that alibi.  In that regard, the attorney's performance fell below the objective standard of reasonableness guaranteed by the United States and New Jersey constitutions. Defendant has met his burden with respect to the first Strickland/Fritz prong.

### C.

Defendant must also satisfy the second, or "prejudice," Strickland/Fritz prong.  The Supreme Court held that "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."  Strickland, supra, 466 U.S. at 693, 104 S. Ct. at 2067, 80 L. Ed. 2d at 697; see also Fritz, supra, 105 N.J. at 52.  A convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[5]  The record provides no support for the PCR court's finding that defense counsel decided not to present Florida-related evidence because he feared that the jury might conclude that defendant fled to Florida after participating in the Elizabeth shooting.  Neither trial counsel nor any other witness testified about any such concern.

29

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; Fritz, supra, 105 N.J. at 52.  Important to the prejudice analysis is the strength of the evidence that was before the fact-finder at trial.  "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, supra, 466 U.S. at 696, 104 S. Ct. at 2069, 80 L. Ed. 2d at 699.

The record of defendant's thirteen-day trial reveals sparse evidence implicating defendant in the Elizabeth shooting.  Among the four men tried for that shooting, only defendant was not identified by any eyewitness in the days and weeks after the crime.  Belinda Myers, who was familiar with defendant and witnessed the shooting at close range, testified that she did not see him at the scene.  The sole eyewitness who testified against defendant, Minus, did not implicate him until ten months after the shooting, when she selected his photograph and that of the three other defendants from photo arrays and identified them as "the guys from the cars."  Prior to viewing the photo arrays, Minus provided no description of the man whom she identified as defendant.  Minus conceded that although she had felt that she could identify the perpetrators ten months after the shooting,

30

she would not be able to "pick [defendants] out" if she saw them at the time of trial. None of the other eyewitnesses to the shooting who testified at trial identified defendant as one of the shooters, or as a driver or passenger in either of the cars involved.

To establish that defendant was in New Jersey on the night of the shooting, the State relied on the testimony of defendant's acquaintance, Johnson. She was not among the group present when Jerry Myers was killed and Karon Henderson was wounded, and her testimony did not place defendant at the scene. However, in a statement to police six months later, and in her testimony at trial, Johnson identified defendant and Dorval as the two men who visited her apartment building twice in the early morning hours of March 20, 1994, hours after the shooting. She also testified that she saw them again outside her apartment several days after the shooting. On cross-examination, Johnson admitted that she was a frequent cocaine user at the time of the shooting as well as when she provided her statement to police, and that she would routinely sleep all day and be awake all night.

That evidence -- Minus's belated and uncertain identification of defendant as one of the men at the scene of the shooting, and Johnson's testimony about a fleeting encounter at her apartment -- comprised the core of the State's case

31

against defendant. In marked contrast to his codefendants, who were identified by multiple eyewitnesses shortly after the crime, defendant was tied to the shooting only by the testimony of Minus, and was not identified by Myers as one of the participants. In that context, defendant's alibi was far more significant than it would have been in the face of compelling evidence of his guilt.

Moreover, the State's evidence countering defendant's alibi was neither direct nor conclusive. The State substantially premised its attack on defendant's alibi on the testimony of Captain Barnett, who was interviewed prior to trial and called by the State as a rebuttal witness.[6] Two years after issuing the speeding ticket, Captain Barnett had no specific recollection of the traffic stop. He did not identify either defendant or Kirby Pierre as the individual to whom he had issued the ticket on March 20, 1994. Instead, the officer generally stated that when he is presented with a driver's license with a photograph "close" to the driver's appearance, he does not "scrutinize it too much." The State also contested defendant's alibi by asking Captain Barnett to describe his own physical appearance, uniform, and police vehicle as of the date of the traffic stop. That description was consistent in some respects, and

---

[6] The record does not reveal why defense counsel did not call Captain Barnett as a witness in defendant's case.

inconsistent in other respects, with defendant's account of the stop in his statement to the police.[7]  The State argued to the jury that defendant incorrectly described the officer and his vehicle because it was Kirby Pierre, not defendant, who encountered the officer.

The State, however, had no direct evidence to support its theory that Kirby Pierre was the driver ticketed by Captain Barnett.  It called no witnesses to testify that Kirby Pierre took his brother's car and his brother's driver's license to Florida.  The State presented no evidence that Kirby was absent from his home or his job at a local restaurant during the last ten days of March 1994, that he was seen by anyone in South Carolina, or that he visited Florida at any time.  Although the State vigorously argued against defendant's alibi, it did not

---

[7]  Defendant described the South Carolina police officer who issued the ticket as "like 30 something, about five-eleven [and] good sized," could not remember whether the South Carolina officer had facial hair, stated that the officer did not have long hair or glasses, stated that the officer did not speak with an accent, and commented that the officer's hat "could have been a cowboy hat."  Captain Barnett, age thirty at the time of trial, testified that in March 1994, he had worn his hair in a "permanent" that was "collar length," that he had a mustache, that his uniform was a black t-shirt with black khaki pants, and that he wore no hat.  The detective also recounted defendant's description of the South Carolina officer's vehicle as "a white four-door, no markings on it and no light rack."  Captain Barnett described his vehicle as a four-door police vehicle marked "Police Yemassee" on both sides, with an overhead light rack with blue lights.

33

present the "overwhelming" proof against that alibi that was described by the PCR court.

In that setting, a fully-developed alibi defense, carefully constructed on defendant's behalf, would likely have altered the outcome of his trial. First, defendant's alibi could have been buttressed by the testimony of Kirby Pierre. To be sure, Kirby Pierre could have been an unconvincing witness at trial, as the PCR court found him to be at the evidentiary hearing. As defendant's brother, he could be accused of bias. He had a drug offense on his record. He did not skillfully withstand cross-examination at the PCR hearing. If, however, the jury believed Kirby Pierre on two fundamental points -- that in March 1994, he did not know how to drive, and that he did not take his brother's car and license to Florida -- his testimony would have been invaluable to defendant.

Second, defendant's alibi would have found support in the testimony of his sister, Astrid Pierre. Although Astrid would be subject to a suggestion of bias by virtue of her relationship to defendant, the record indicates no other basis for an attack on her credibility. Based on her statements at the PCR hearing, Astrid Pierre could have corroborated her brother Kirby's testimony that he could not drive, that he remained in New Jersey throughout March 1994, and that he never visited Florida that month or at any other time.

34

Third, while evidence that defendant was in South Carolina on March 19 and 20 was most critical to his defense, evidence that he was in Florida in the week that followed would have supported his alibi. The six collect calls from Florida on March 21, 23, 25 and 26, 1994 that were reflected on Reid's telephone bill could not themselves exculpate defendant; he could have participated in the shooting in Elizabeth in the early hours of March 20, driven to Florida, and then made the calls. Evidence of those calls, however, would have permitted the jury to infer that after being pulled over for speeding and calling Reid from South Carolina on the night of the Elizabeth shooting, defendant proceeded as planned to his Florida destination. The record showing the six additional calls would have undermined the State's argument that only one call was in evidence and that single call was placed by Kirby, not defendant. Thus, the evidence of the additional telephone calls to Reid, while not dispositive, could have assisted the defense.

The potential testimony of defendant's Florida relatives, if believed by the jury, might have provided further support for defendant's alibi by confirming his presence in Florida in the days following the Elizabeth shooting. As revealed by the PCR record, defendant's Florida-based uncle and sisters raised significant credibility concerns. None testified consistently with the affidavit prepared for him or her by defendant's PCR

35

counsel; each affidavit identified March 20, 1994 as the date that he or she first encountered defendant on his Florida visit. The three witnesses were uncertain of the precise date of defendant's arrival when they testified before the PCR court.

As is any witness who misstates a fact sworn to in an affidavit, defendant's Florida relatives would have been subject to substantial impeachment had they testified. Notwithstanding their credibility issues, however, the Florida witnesses warranted defense counsel's investigation. Had they done nothing more than testify that defendant, as opposed to his brother Kirby, visited them in Florida at some point in the last ten days of March 1994, defendant's relatives would have reinforced his alibi centered on the South Carolina speeding ticket. Their potential testimony, not explored by defense counsel, could have strengthened that alibi.

In short, had it been developed to the extent permitted by the available evidence, defendant's South Carolina alibi would most likely have given rise to reasonable doubt about defendant's guilt. Unsupported by that evidence, the alibi was effectively neutralized by the arguments presented by the State.

Defendant has therefore met his burden to show a "reasonable probability" -- a probability "sufficient to undermine confidence in the outcome" -- that the result of his trial would have been different had his counsel effectively

36

represented him at trial.  <u>Strickland</u>, <u>supra</u>, 466 <u>U.S.</u> at 694, 104 <u>S. Ct.</u> at 2068, 80 <u>L. Ed.</u> 2d at 698; <u>Fritz</u>, <u>supra</u>, 105 <u>N.J.</u> at 52.  Defendant's counsel's errors were sufficiently serious so as to undermine confidence that defendant's trial was fair, and that the jury properly convicted him.  Defendant has made the required showing with respect to the second prong of the <u>Strickland</u>/<u>Fritz</u> test.

We hold that, by virtue of the combined errors of his trial attorney, defendant was denied his constitutional right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution, and that he is entitled to a new trial.

IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE FERNANDEZ-VINA did not participate.

37

SUPREME COURT OF NEW JERSEY

NO.    A-86                              SEPTEMBER TERM 2013

ON CERTIFICATION TO     Appellate Division, Superior Court


STATE OF NEW JERSEY,

      Plaintiff-Respondent,

          v.

DUQUENE PIERRE,

      Defendant-Appellant.


DECIDED           December 17, 2015
          Chief Justice Rabner                          PRESIDING

OPINION BY        Justice Patterson

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |