**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0538-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAWORSKI SNEED, a/k/a
JAWORSKI SNEET,

    Defendant-Appellant.

_____

Submitted September 23, 2025 - Decided October 8, 2025

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-10-1910.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the briefs).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jaworski Sneed appeals from the August 9, 2023 order denying his petition for post-conviction relief (PCR) after an evidentiary hearing. Defendant contends he demonstrated ineffective assistance of counsel (IAC) warranting reversal of his convictions and sentence because trial counsel failed to present alibi witnesses. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

This matter returns to us after we reversed and remanded the prior PCR judge's June 28, 2018 order, which denied defendant's PCR petition without an evidentiary hearing. See State v. Sneed, No. A-0638-18 (App. Div. Dec. 29, 2020) (slip op. at 1-12) (Sneed II). We directed that a new PCR judge hold an evidentiary hearing. Sneed II, slip op. at 11. In 2013, defendant had filed a direct appeal challenging his convictions and sentence after a jury found defendant guilty of: first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three).

Although we affirmed defendant's convictions, we reversed and remanded for resentencing. State v. Sneed, No. A-5865-12 (App. Div. Aug. 5, 2016) (slip

A-0538-23

op. at 1-12) (Sneed I).  Following our remand, the court sentenced defendant to: a thirty-year prison term with a thirty-year period of parole ineligibility on count one; and a concurrent ten-year sentence on count two, subject to the Graves Act, N.J.S.A. 2C:43-6(c).  The Supreme Court later denied defendant's petition for certification.  State v. Sneed, 228 N.J. 239 (2016).

We limit our recitation of the facts to the issues raised in this appeal, as we presume the parties are familiar with the facts detailed in our prior opinions. At approximately 9:30 p.m. on December 24, 2010, two eyewitnesses observed defendant fatally shoot a male convenience store worker on a Newark street. One eyewitness was the victim's daughter, and the other was her stepfather. They positively identified defendant as the shooter.  Two other eyewitnesses, including defendant's girlfriend at the time, corroborated their description of defendant.  Video evidence of the shooting from a nearby store's surveillance cameras showed the shooter's attire and defendant's cousin, Jimmie Nickerson, along with two other people, assaulting the victim immediately before the shooting.

Defendant filed his self-represented PCR petition in 2017.  PCR counsel supplemented the petition in March 2018, arguing defendant's trial counsel's failure to call alibi witnesses amounted to IAC warranting an evidentiary

3

hearing.  Defendant provided a certification along with certifications from the following relatives:  Cheron Sneed, defendant's mother; Nickerson; and Brittany Tolliver, defendant's aunt.[1]  The three relatives attested to defendant's whereabouts on the night of the shooting.

On August 9, 2023, after an evidentiary hearing, Judge Christopher J. Romanyshyn issued an order accompanied by a cogent twenty-one-page written decision analyzing and rejecting defendant's PCR claim.  At the hearing, Cheron, Nickerson, Tolliver, defendant's trial counsel, and defendant testified.  Cheron maintained that shortly before the shooting, defendant "called . . . and told [her] he was waiting for a ride to get home," but Cheron conceded she "did not see" defendant after he left their house in the afternoon of December 24, 2010. Nickerson asserted defendant could not have been the shooter because: Nickerson was near the location of the shooting and he did not see defendant; defendant was at Tolliver's house, which was a block-and-a-half away; and defendant would not have had time to travel to the shooting location.  Nickerson acknowledged he did not "actually see the shooting" nor the shooter.  Tolliver testified that:  defendant was at her house the night of the shooting; she gave him her telephone to call for a ride home shortly before the shooting; and after

---

[1] We refer to Cheron by her first name for clarity.  We intend no disrespect.

"he went into the bathroom" to make a phone call, she went "upstairs" and did not see him again.

On appeal, defendant raises a single point for our consideration:

> MR. SNEED IS ENTITLED TO RELIEF ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO PRESENT ALIBI WITNESSES BECAUSE MR. SNEED PROVED HIS CLAIM AND/OR BECAUSE THE PCR COURT APPLIED THE WRONG STANDARD OF REVIEW, AND A FACTUALLY UNSUPPORTED AND FAULTY ANALYSIS.

## II.

"Our review of a PCR [judge]'s factual findings" after it conducts an evidentiary hearing "is 'necessarily deferential.'" State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). "An appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he has observed firsthand." State v. Gideon, 244 N.J. 538, 562 (2021) (quoting Nash, 212 N.J. at 540). Therefore, when a PCR judge holds an evidentiary hearing, we should "uphold the PCR [judge]'s findings that are supported by sufficient credible evidence in the record." Id. at 551 (quoting Nash, 212 N.J. at 540). "However, we review a

PCR court's legal conclusions de novo."  Hernandez-Peralta, 261 N.J. at 246; see also State v. Harris, 181 N.J. 391, 415-16 (2004).

To succeed on an IAC claim, a defendant must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), as adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), "by a preponderance of the credible evidence."  Nash, 212 N.J. at 541 (quoting State v. Preciose, 129 N.J. 451, 459 (1992)).  "'To sustain that burden, specific facts' which 'would provide the court with an adequate basis on which to rest its decision' must be articulated."  State v. Hand, 480 N.J. Super. 15, 26 (App. Div. 2024) (quoting State v. Mitchell, 126 N.J. 565, 579 (1992)).  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  The PCR judge "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'"  Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

6

Under the second prong of the <u>Strickland</u> test, the defendant must show "the deficient performance prejudiced the defense." <u>Id.</u> at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Ibid.</u> It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." <u>Id.</u> at 693.

"The 'benchmark' for judging whether counsel's assistance was constitutionally ineffective is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" <u>Hernandez-Peralta</u>, 261 N.J. at 247 (quoting <u>Strickland</u>, 466 U.S. at 686). Moreover, courts must "make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" <u>Id.</u> at 251 (omission in original) (quoting <u>State v. Pierre</u>, 223 N.J. 560, 579 (2015)).

III.

After reviewing defendant's arguments in light of the evidentiary hearing record and affording deference to the PCR judge's factual findings, we affirm substantially for the reasons set forth in Judge Romanyshyn's sound decision. We add the following comments.

A-0538-23

Defendant contends the judge erred in finding he did not meet his burden of demonstrating IAC after applying "a legally incorrect and far too stringent standard." Defendant specifically argues he established that trial counsel was deficient for failing to present the alibi testimony of Cheron, Nickerson, and Tolliver, all of whom he contends would have strengthened his defense and created a reasonable doubt as to his guilt. Defendant further avers the judge incorrectly focused on Cheron's, Nickerson's, and Tolliver's credibility rather than focusing on whether their testimony would have "bolster[ed] the defense or refute[d] the prosecution." We reject defendant's arguments.

We are guided by the general principles regarding alibi witnesses. "Where a person must be present at the scene of the crime to commit it, the burden of proving the defendant's presence beyond a reasonable doubt is upon the State." Model Jury Charges (Criminal), "Alibi," at 1 (rev. May 12, 2008); see also State v. Mucci, 25 N.J. 423, 431 (1957). Thus, "the accused may offer evidence tending to show that at the alleged time of the commission of the act charged, he was elsewhere . . . to overcome the" State's evidence. Mucci, 25 N.J. at 431. "An alibi is asserted whenever there is evidence that would suggest the accused was in some other location, and thus, could not have possibly committed the crime." State v. Echols, 398 N.J. Super. 192, 207-08 (App. Div. 2008), rev'd on

other grounds, 199 N.J. 344 (2009). An alibi defense is only sustainable where the offered evidence establishes "the physical impossibility of the accused's guilt." Id. at 207 (quoting Mucci, 25 N.J. at 431).

In the absence of clear exculpatory alibi evidence, our Supreme Court has recognized that "[d]etermining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront." Pierre, 223 N.J. at 579 (alteration in original) (quoting State v. Arthur, 184 N.J. 307, 320 (2005)). The Supreme Court has elucidated that:

> A trial attorney must consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment by prior inconsistent statements or other means, whether the witness is likely to contradict the testimony of other witnesses the attorney intends to present and thereby undermine their credibility, whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors.
>
> [Arthur, 184 N.J. at 320-21.]

Therefore, "[a]s a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of a fair trial." State v. Allegro, 193 N.J. 352, 367 (2008) (quoting State v. Castagna, 187 N.J. 293, 314-15 (2006)). "[C]ounsel has a duty to make reasonable investigations or to make

a reasonable decision that makes particular investigations unnecessary." State v. Porter, 216 N.J. 343, 353 (2013) (alteration in original) (quoting State v. Chew, 179 N.J. 186, 217 (2004)). "[I]f counsel makes a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is 'virtually unchallengeable.'" Nash, 212 N.J. at 542 (alteration in original) (quoting Chew, 179 N.J. at 217).

We agree with Judge Romanyshyn's determination that Cheron's, Nickerson's, and Tolliver's testimony did not sufficiently establish that defendant could not have been at the shooting location and committed the crime. The judge found that "none of the three" witnesses were "true alibi witness[es] and at best could be characterized as imperfect alibi witnesses[es]." Stated another way, the witnesses' purported alibi testimony did not negate that on December 24, 2010, at 9:30 p.m., defendant had the ability to commit the murder.

We further discern no error in the judge's determination that trial counsel was not deficient, as trial counsel "fully investigated and evaluated the proffered witnesses, determined that they did not add much, if anything, to his case, and advised [defendant] accordingly," and defendant "accepted that advice." The judge found trial counsel "credibly testified" and established the trial strategy

A-0538-23

was "objectively reasonable." Trial counsel's inability to fully examine Nickerson's and Tolliver's possible testimony because they declined to be interviewed and to cooperate is not IAC. See Nash, 212 N.J. at 543 ("[C]ounsel cannot be faulted if he [or she] was stonewalled."). Moreover, trial counsel testified that although he made the ultimate strategic decisions, defendant was informed because they had discussed the witnesses' testimony and evidence. It is well-established that "[m]ere dissatisfaction with a 'counsel's exercise of judgment' is insufficient to warrant overturning a conviction." Nash, 212 N.J. at 542 (quoting Echols, 199 N.J. at 358). Therefore, defendant failed to establish that trial counsel was deficient in declining to call the witnesses who could not provide an exculpatory alibi.

Finally, the record also demonstrates Cheron's, Nickerson's, and Tolliver's testimony would have had no effect on the trial's outcome. As the judge found, none of the witnesses' testimony provided "concrete facts . . . to undermine the direct eyewitness testimony the State offered." In fact, their testimony would have had a likelihood of weakening defendant's identification and reasonable doubt defense.

11

For these reasons, the record supports the PCR judge's conclusion under Strickland that defendant failed to establish trial counsel was deficient and he suffered prejudice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0538-23