**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0807-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RYON L. GREEN,

    Defendant-Appellant.

_____

        Submitted April 12, 2021 -  Decided May 10, 2021

        Before Judges Messano and Suter.

        On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 12-05-0580.

        Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

        Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Danielle R. Pennino, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Ryon Green of first-degree robbery and related offenses, and the judge sentenced him to a fifteen-year term of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. We affirmed defendant's conviction and sentence on direct appeal. State v. Green, No. A-5355-13 (App. Div. Aug. 5, 2016) (slip op. at 2). The Court denied his petition for certification. 228 N.J. 90 (2016).

Defendant was indicted with Vascell McKoy for the armed robbery of a gas station. We briefly summarize the trial evidence referenced in our prior opinion. Green, slip op. at 3–6.

Neither the victim nor witnesses could identify the assailants, who wore face coverings. Id. at 3–4. Based on a description of the getaway vehicle, police proceeded to McKoy's nearby home minutes after receiving the report of the robbery and arrived as he was backing the car out of the driveway; defendant was in the passenger seat. Id. at 4–5. Police stopped the car nearby. Id. at 5. Eventually, police recovered clothing, a gun and money from the car, McKoy's home and from an area behind the gas station. Id. at 6. DNA evidence linked McKoy to a hat found near the gas station, but no DNA evidence implicated defendant. Ibid.

A-0807-19

Defendant testified at trial and denied any involvement. Id. at 6. He was at McKoy's home, with his girlfriend, Vascell's sister, Vinchel McKoy, at the time of the robbery.[1] Ibid. Vascell was giving defendant a ride home when police stopped the vehicle.

Defendant filed a timely pro se petition for post-conviction relief (PCR) in which he asserted the ineffective assistance of trial counsel (IAC). In defendant's supplemental certification, prepared with appointed PCR counsel's assistance, defendant claimed that trial counsel failed to interview Vascell and Vinchel. Both, he claimed, would have supported defendant's testimony at trial. Defendant alleged that trial counsel refused to call either Vascell or Vinchel as a witness despite defendant's direction to do so.

In his brief, PCR counsel asserted counsel's failure to investigate corroboration of defendant's alibi required reversal of defendant's conviction, or alternatively, an evidentiary hearing on defendant's petition.[2] Attached to counsel's brief were certifications from Vascell and Vinchel, and documentary evidence that the Disciplinary Review Board considered three complaints made

---

[1] For the balance of our opinion, to avoid confusion, we use the first names of the McKoy family members, as necessary. We apologize for the informality.

[2] We do not discuss other specific IAC claims defendant asserted because they are not preserved for appeal.

against trial counsel, one of which was in close proximity to the trial in this case, and twice censured him.[3] PCR counsel also noted that he was unable to obtain trial counsel's file without first securing a court order.[4]

The certification from Vascell, who had pled guilty prior to defendant's trial and received a five-year term of imprisonment, said that defendant had spent most of the two days prior to the robbery with Vinchel. Consistent with defendant's trial testimony, Vascell claimed that defendant did not participate in the robbery, and he was giving defendant a ride home when police stopped the car.

Vinchel's certification confirmed that defendant was with her at the time of the robbery and until Vascell returned home and defendant left with him in Vascell's car. Vinchel certified that trial counsel never contacted her. Vascell and Vinchel each certified that in 2018, they went to the prosecutor's office and advised that defendant "did not have anything to do with the robbery."

---

[3] In his PCR brief, counsel asserted that trial counsel was disciplined for "negligence and lack of diligence," however, the documents in the appendix do not specify the nature of the complaints.

[4] The order is not in the record.

A-0807-19

In response, the State produced a certification from trial counsel. He said defendant's claim that he instructed counsel to interview and subpoena Vascell and Vinchel "to testify as alibi witnesses is not true." Counsel then averred:

> Had [defendant] made such a suggestion, by no means would I have agreed to involve either of the McKoys as alibi witnesses because I am absolutely certain neither . . . was able to provide truthful and legitimate alibi testimony.
>
> In addition to the ethical and legal barriers that would have prevented my calling the McKoys as trial witnesses, it is presently my belief that their involvement in the trial would have assured a conviction.

There was no further explanation of these rather vague assertions.

After considering oral argument, the PCR judge, who was not the trial judge, announced a brief oral opinion on the record. Citing trial counsel's certification, the judge concluded the decision not to call either or both McKoys as witnesses was deserving of "great deference," because "[d]etermining which witnesses to call . . . is one of those difficult, strategic decisions that any [t]rial [a]ttorney must confront." Rejecting PCR counsel's argument that trial counsel failed to provide any basis for not calling the McKoys as witnesses, the judge reasoned, "the inference is that there would be ethical legal barriers" to doing so. According to the judge, trial counsel "either knew that their testimony would

5

A-0807-19

be false and would not be permitted to present them, or something else . . . that was obviously known."

The judge then considered both prongs of the Strickland/Fritz standard applicable to IAC claims.[5] He concluded trial counsel "did investigate the alibi witnesses and other witnesses and chose not to call those witnesses for reasons stated in his [certification]." The judge also concluded defendant failed to demonstrate any prejudice, noting, "[T]here was great evidence against the defendants in this case. Their identifications . . . [and] other evidence[] presented [was] sufficient to sustain the verdict of guilty." The judge concluded defendant had not presented a prima facie case warranting an evidentiary hearing. He entered the order under review denying defendant's petition, and this appeal followed.

Before us, defendant argues in a single point that the PCR judge erred by not granting an evidentiary hearing, which was necessary to resolve whether trial counsel adequately investigated potential witnesses that could have bolstered defendant's alibi at trial. We agree and remand for an evidentiary hearing before a different judge.

---

[5] Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).

A-0807-19

Our rules anticipate the need to hold an evidentiary hearing on a PCR petition, "only upon the establishment of a prima facie case in support of post-conviction relief." R. 3:22-10(b). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 355 (2013) (emphasis added) (quoting R. 3:22-10(b)).

To succeed on an IAC claim, a defendant must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). Second, a defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Id. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

"To satisfy prong one, [defendant] had to 'overcome a "strong presumption" that counsel exercised "reasonable professional judgment" and "sound trial strategy" in fulfilling his responsibilities.'" State v. Nash, 212 N.J. 518, 542 (2013) (quoting State v. Hess, 207 N.J. 123, 147 (2011)). "[I]f counsel

7

makes a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is 'virtually unchallengeable.'" Ibid. (alteration in original) (quoting State v. Chew, 179 N.J. 186, 217 (2004)).

When the court conducts an evidentiary hearing, "[o]ur standard of review is necessarily deferential to a PCR court's factual findings . . . that are supported by sufficient credible evidence in the record." Id. at 540 (citing State v. Harris, 181 N.J. 391, 415 (2004)). However, here, the judge did not conduct any hearing; instead, he made factual determinations based solely on trial counsel's certification. He never addressed the certifications furnished by defendant, Vascell and Vinchel.

More importantly, the judge seemingly concluded that trial counsel had actually investigated what Vascell or Vinchel might testify to if called as witnesses; however, counsel never acknowledged speaking to either of them in his certification. Vinchel's certification stated unequivocally that trial counsel never spoke with her.

Counsel's certification made only oblique references to possible ethical constraints that prevented him from calling the McKoys as witnesses. The judge concluded that counsel believed the McKoys would perjure themselves or there was "something else," known but undisclosed by counsel, that entered his

A-0807-19

decision-making process. Of course, that reasoning begs the question of how counsel could have ethically permitted his client to testify at trial regarding an alibi in which he claimed to be with Vinchel, yet somehow be ethically prohibited from offering Vinchel's corroborative testimony. To the extent the judge made credibility determinations based on the certifications, which were sometimes contradictory, it was error, and we owe no deference to his factual determinations. See Porter, 216 N.J. at 356 (noting it was "abundantly clear that an evidentiary hearing was warranted" when the judge made credibility determinations based only on certifications). Simply put, applying the indulgent standards required, the evidence failed to support a claim that trial counsel actually conducted any investigation of the alibi defense.

In considering the second, prejudice prong of the Strickland/Fritz standard, "the strength of the evidence that was before the fact-finder at trial" is important. Pierre, 223 N.J. at 583. Clearly, the judge misspoke when evaluating the strength of the State's case, since there was no identification of defendant by any witness at trial and all the forensic evidence inculpated Vascell, not defendant. The State's case against defendant was entirely circumstantial.

Seen in this light, trial counsel's alleged investigative failures, if true, are critical. "Failure to investigate an alibi defense is a serious deficiency that can

result in the reversal of a conviction.  Indeed, 'few defenses have greater potential for creating reasonable doubt as to a defendant's guilt in the minds of the jury [than an alibi].'"  Porter, 216 N.J. at 353  (alteration in original) (quoting State v. Mitchell, 149 N.J. Super. 259, 262 (App. Div. 1977)).

In sum, defendant presented a prima facie case for PCR relief that warranted an evidentiary hearing.  We remand the matter to the Law Division to conduct such a hearing.  We further order that because the PCR judge made unwarranted credibility assessments on the limited record before him, the hearing on remand should be conducted by a different judge.  See, e.g., P.T. v. M.S., 325 N.J. Super. 193, 220–21 (App. Div. 1999) (collecting cases demonstrating reasons for ordering remand before a different judge).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0807-19