**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4591-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KASHIF PARVAIZ,

     Defendant-Appellant.

_____

Submitted May 10, 2021 – Decided July 2, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 12-06-0665.

Nancy C. Ferro, attorney for appellant.

Robert J. Carroll, Acting Morris County Prosecutor, attorney for respondent (Paula Jordao, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

A jury convicted defendant Kashif Parvaiz of the first-degree murder of his wife, the culmination of an elaborate scheme defendant hatched with his paramour, Antoinette Stephen, in which, making it appear as a robbery, Stephen laid in wait and shot defendant and his wife as they walked on the street pushing their young son in a stroller. State v. Parvaiz, No. A-5029-14 (App. Div. June 18, 2018) (slip op. at 1–2, 5). Stephen pled guilty and testified against defendant. Id. at 2. In addition, following a N.J.R.E. 104(c) hearing, the trial judge ruled the multiple recorded and unrecorded statements defendant made to law enforcement at the scene of the shooting, at the hospital while awaiting treatment, and at the hospital after his admittance as a patient, were admissible. Id. at 5–8. While at the hospital, defendant also consented to a search of his cellphone, which ultimately led to the identification of Stephen. Id. at 5.

The judge sentenced defendant to life imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, with consecutive sentences on related charges that aggregated to an additional ten years. Parvaiz, slip op. at 2. We affirmed defendant's conviction and sentence on appeal. Id. at 4. The Court denied defendant's petition for certification. State v. Parvaiz, 236 N.J. 367 (2019).

Defendant filed a timely pro se petition seeking post-conviction relief (PCR). PCR counsel entered her appearance and argued that trial counsel rendered ineffective assistance (IAC) because he failed to produce expert testimony at the Rule 104 hearing regarding the effect certain drugs administered to defendant after the shooting had on his ability to knowingly and voluntarily waive his Miranda[1] rights and knowingly and voluntarily consent to the search of his cellphone.[2] PCR counsel focused on the report and testimony of the defense expert called to testify at trial, Dr. William A. Stuart, qualified by the trial court as an expert in emergency medicine.

Trial counsel first retained Dr. Stuart in 2012, and the doctor furnished a report in January 2015, after the Rule 104 hearing and approximately one month before trial began. In his testimony before the jury, Dr. Stuart concluded "that given the medication administered at the hospital, defendant would have been asleep when [one detective] interviewed defendant in an unrecorded conversation. Dr. Stuart also opined that other medication given to defendant

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] Defendant's pro se petition did not assert any specific ground for relief, and the appellate record does not include any filings made with the PCR court. We characterize the arguments made by defendant based on counsel's oral argument before the PCR judge and the PCR judge's comprehensive written opinion.

A-4591-19

makes patients susceptible to suggestion and unable to exercise critical judgment." Parvaiz, slip op. at 18. PCR counsel argued that trial counsel was ineffective because he failed to produce expert testimony during the Rule 104 hearing "to cast . . . doubt on the voluntary statement."[3] She argued that calling Dr. Stuart at trial made no difference because the judge already ruled the statements were admissible.

After considering oral argument, Judge David H. Ironson, who was not the trial judge, denied defendant's PCR petition. In a written opinion accompanying his order, Judge Ironson appropriately set forth the two-prong standard for deciding IAC claims enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Judge Ironson found "that trial counsel's decision to not offer medical expert testimony at the [Rule] 104 hearing was a strategic one that did not thwart the fundamental guarantee of a fair trial."

He noted that the trial judge conducted hearings over five court days, during which defense counsel "cross-examined each witness in regard to . . . [defendant's] cooperation and demeanor given his medical condition." Judge

---

[3] Defendant raised this precise issue in his pro se brief on direct appeal. Id. at 12, n.3. We deferred consideration pending the filing of a petition for post-conviction relief. Ibid.

A-4591-19

Ironson reviewed that testimony in detail. He also cited the extensive written decision of the trial judge following the Rule 104 hearing, see Parvaiz, slip op. at 7–8, specifically the judge's findings regarding the credibility of the police witnesses and each officer's testimony that "[d]efendant was alert and . . . able to communicate." Noting Dr. Stuart's testimony at trial regarding his contact with trial counsel after his retention, Judge Ironson concluded defendant failed to rebut the strong presumption that counsel made a reasonable, strategic decision not to call the doctor at the Rule 104 hearing and did not render deficient performance.

Judge Ironson nevertheless considered the second prong of Strickland/Fritz, namely whether, assuming arguendo counsel rendered deficient performance, defendant suffered prejudice. He noted the trial judge considered various medical reports about defendant's condition at the Rule 104 hearing and heard recordings of defendant's statements. Judge Ironson took note of our opinion, where we rejected "the implicit assertion that the [trial] judge was unable to assess the voluntariness of defendant's statements without expert medical testimony." Parvaiz, slip op. at 11. Judge Ironson denied the petition without an evidentiary hearing. This appeal followed.

A-4591-19

Defendant reprises the same arguments made before Judge Ironson. He contends that trial counsel rendered ineffective assistance "in failing to present medical expert testimony" at the Rule 104 hearing as to the voluntariness of his statements and "to demonstrate that defendant's consent to search his cellphone was not voluntarily given." We affirm substantially for the reasons expressed by Judge Ironson and add these comments.

To successfully present an IAC claim, a defendant must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). As to this prong, "there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]' [and t]o rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" State v. Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 689). "If counsel thoroughly investigates law and facts, considering all possible options, his or her trial strategy is 'virtually unchalleng[e]able.'" State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690–91).

Additionally, a defendant must prove he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687. A defendant must

show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

We agree that trial counsel's performance was not deficient. Our view coincides with something expressed by Judge Ironson during oral argument, namely that it was perfectly reasonable for trial counsel not to call Dr. Stuart as a witness at the Rule 104 hearing because it would have provided the State with two opportunities to cross-examine the doctor. Moreover, PCR counsel's assertion that producing Dr. Stuart at trial was "too late" because the statements were already admitted in evidence fundamentally misapprehends a critical tenet regarding the jury's consideration of a defendant's statement to law enforcement.

Since State v. Hampton, decided nearly fifty years ago, despite the judge's ruling on admissibility, it is for the jury to decide whether a defendant's statement is credible under all the circumstances of a particular case. 61 N.J. 250, 272 (1972); see also Model Jury Charges (Criminal), "Statements of Defendant" (rev. June 14, 2010) (advising jurors to decide "whether or not the statement was actually made by the defendant, and, if made, whether the statement or any portion of it is credible"). In other words, there was nothing

7

unreasonable about trial counsel's decision to save Dr. Stuart for the defense case, hoping his medical expertise could sway the jury to conclude defendant's statements, made after being shot, losing much blood, and receiving strong medications, were not believable and were the product of overreach by the officers.  The jury seems to have rejected Dr. Stuart's opinions.  Yet, the simple fact that a trial strategy fails does not necessarily mean that counsel was ineffective.  State v. Bey, 161 N.J. 233, 251 (1999) (citing State v. Davis, 116 N.J. 341, 357 (1989)).

To carry his burden on the second prejudice prong of the Strickland/Fritz standard, defendant had to demonstrate a reasonable probability that had Dr. Stuart, or some other expert, testified at the Rule 104 hearing, the outcome would have been different, i.e., the trial judge would have ruled some or all of defendant's statements were not admissible.  "In making a prejudice finding, the PCR court must consider 'the totality of the evidence before the judge or jury.'" State v. L.A., 433 N.J. Super. 1, 14 (App. Div. 2013) (quoting Strickland, 466 U.S. at 695).

The PCR court "considering the impact of [an] absent witness" must evaluate, among other things, "the credibility of all witnesses, including the likely impeachment of the uncalled defense witness[] . . . and . . . the strength

of the evidence actually presented by the prosecution." Id. at 16–17 (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996)). Here, the trial judge found the State's witnesses' testimony at the Rule 104 hearing to be credible and compelling. Dr. Stuart, on the other hand, had reviewed police reports and defendant's medical records, but he had never interviewed defendant. Parvaiz, slip op. at 18. Defendant failed to establish a reasonable probability that the result of the pre-trial hearing on admissibility would have been different had trial counsel called a medical expert at the Rule 104 hearing to render opinions like those expressed by Dr. Stuart at trial. The same is true with regard to defendant's consent to search his cellphone.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION