**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5379-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JARON D. REEVEY, a/k/a
JONATHAN LEE, and
JARONE REEVEY,

    Defendant-Appellant.

_____

Submitted March 15, 2021 – Decided August 9, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 03-11-2080.

Joseph E. Krakora, Public Defender, attorney for appellant (John V. Molitor, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a supplemental pro se brief.

PER CURIAM

This matter is before us substantively for a third time. We set out the procedural history in our last opinion and repeat it here again to place this current appeal in the proper context.

> Tried by a jury in 2005, defendant Jaron Reevey was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count one); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count two); first-degree robbery, N.J.S.A. 2C:15-1 (count three); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count six). At sentencing, after merging count two with count one and count five with count four, the judge imposed a life sentence with a thirty-five-year period of parole ineligibility on count one, a consecutive eighteen-year sentence with an [eighty-five percent] period of parole ineligibility on count three, and concurrent sentences on counts four and six.
>
> On appeal, the State conceded that trial errors required reversal of the convictions for felony murder, robbery and conspiracy. State v. Reevey [(Reevey I)], No. A-1414-05 (App. Div. Apr. 10, 2008) (slip op. 3–4). As a result, we remanded for a new trial on those charges, and because it was error to merge counts four and five, we remanded for re-sentencing on those counts. Id. at 4. In all other respects we affirmed defendant's conviction and sentence. Ibid. The

A-5379-18

> Supreme Court denied defendant's petition for certification. 196 N.J. 85 (2008).
>
> [State v. Reevey (Reevey II), No. A-5882-13 (App. Div. Nov. 4, 2016) (slip op. at 1–2).]

The State dismissed the charges we remanded for a new trial, and the judge resentenced defendant. Id. at 3. We heard defendant's appeal on our Excessive Sentence Oral Argument calendar and affirmed defendant's sentence. Ibid.

Defendant filed a petition for post-conviction relief (PCR) alleging the ineffective assistance of trial counsel (IAC). Ibid. The thrust of defendant's petition centered on trial counsel's failure to call several purported exculpatory witnesses, some of whom furnished sworn statements that provided a level of support for defenses at trial. Id. at 5–10. A different judge heard argument, denied the petition without an evidentiary hearing, and defendant again appealed. Id. at 10–11.

We reversed and remanded the matter for an evidentiary hearing. Id. at 11. Specifically, we rejected the PCR judge's conclusion regarding trial counsel's decision not to produce Steven Teasley as a witness. Id. at 25. Teasley supplied a pre-trial affidavit that challenged the credibility of one of the State's witnesses at trial, Anthony Vitelli, a jailhouse informant. Id. at 24. The trial judge excluded the affidavit when the prosecutor objected based on its late

production the day before trial, and Teasley was never called by defense counsel as a witness. Id. at 6–7.

We also concluded the PCR judge erred in denying a hearing on defendant's motion for a new trial based on four affidavits secured post-trial. Id. at 25. We determined that these four post-trial affidavits, from James Thomas, Ronald Strong, Johnathan Givens, and Calvin Weaver, "if true, impeached the testimony of key State's witnesses." Id. at 8–9, 26.

We also addressed defendant's IAC claim regarding four witnesses subpoenaed before trial by defense counsel but not called as witnesses. Id. at 27. We noted defendant failed to provide any affidavits or certifications as to what these witnesses' likely testimony would have been, that one seemingly testified at trial using her married name, and another's likely testimony was elicited by trial counsel during cross-examination of a detective. Ibid. Nevertheless, because we were remanding for other reasons, we allowed defendant "to present any evidence to support his IAC claim in this regard." Id. at 28 (emphasis added).

I.

The remand hearing began before a third judge in November 2017, since the trial judge and the PCR judge had both retired. Defendant called his aunt,

4

Barbara Miles, a/k/a Mancle, as a witness. Miles was one of two alibi witnesses named in a notice of alibi signed by defendant and served on the prosecutor before trial. Although subpoenaed, she was never called as a witness. Id. at 6–7.

She testified that on the night of the murder, defendant was across from her home with her son and others, nearly "a mile or two away" from the Rite Aid where the murder took place. Miles claimed to have spoken with defense counsel during her frequent attendance at defendant's trial, and she identified an affidavit she provided in 2014 that contained the substance of her testimony at the PCR evidentiary hearing. However, although she identified a subpoena served on her prior to defendant's trial, she remained unsure if she had received it at the time of the trial. More importantly, Miles confusedly believed she had actually testified at the trial when in fact she was never called as a witness.[1]

---

[1] No witnesses were available to testify at the next hearing date in December 2017. Defendant had filed a pro se motion for a new trial based on newly discovered evidence. The motion and supporting papers are not in the appellate record, but, in any event, the PCR judge reasoned that she had before her "an appellate remand, and that has priority." She determined the motion was "non-conforming" and entered an order dismissing the motion without prejudice. To the extent defendant now alleges this demonstrates he was denied an opportunity to present evidence in support of a new trial motion, we reject the claim. Simply put, whatever issues defendant intended to raise, they were not within the scope of our remand and more importantly were never addressed in the Law Division.

Before any further evidence was adduced, defendant successfully moved to represent himself for the balance of the evidentiary hearing with appointed PCR counsel serving in a standby role. Apparently, because the PCR judge retired, the balance of the evidentiary hearing took place over three days before a different judge. Defendant produced his father, Edward D. Reevey, Teasley, Charles Benoit, the defense investigator at the time of trial, trial counsel David Parinello, George S. Scott, and Kenneth Lyons as witnesses. Defendant also testified. We discuss the testimony relevant to the issues presented on appeal.

Teasley and Vitelli were housed together in the Monmouth County Jail, and Teasley testified that Vitelli told him he intended to help himself "[b]y shooting the prosecutor some B.S. about a murder that had took place in Neptune . . . at a pharmacy or something." Teasley provided an affidavit before trial in 2004 to a defense investigator and told the investigator he was willing to testify. On cross-examination, the prosecutor noted inconsistencies between Teasley's testimony and the affidavit, and he impeached Teasley's credibility through his prior convictions.

In his oral opinion, the PCR judge concluded that Benoit interviewed Teasley before trial, and that the investigator "gave his file and notes to . . . Parinello" months before the trial began. However, the judge cited Teasley's

6

"aggressive and defensive . . . testimony" during the hearing. He found that Teasley "could not recall much, [and] because of the various discrepancies in his testimony and affidavits, and because of his demeanor . . . he was not a credible witness."

Scott was a cellmate of Anthony Simmons, another jailhouse informant who testified as a prosecution witness at trial. Simmons "overheard a conversation between his cellmate [Charles] Chandler and defendant in which defendant admitted he had committed the Rite Aid murder, told the victim to go back into the store, and when the victim refused and rushed at him, defendant 'blasted' the victim." Reevey I, at 10. Scott gave a statement to Benoit in 2004, in which he told of Simmons' curiosity about defendant's case. Scott testified that defendant never admitted committing the crime in their conversations, and Scott believed that Simmons "possibly may have been looking to share a favor or find a way out of his situation." In his oral opinion, the PCR judge recounted Scott's testimony but otherwise did not make specific findings.

Lyons was another jailhouse informant who testified at trial to "having a conversation with defendant . . . concerning defendant's plan to steal a Mercedes . . . from the pharmacy parking lot." Reevey I, at 9. Lyons, like Teasley, supplied one of the affidavits Parinello turned over to the prosecutor shortly

7

before trial. In that affidavit, Lyons claimed "that he lied to investigating detectives and was a 'delusional drug' addict at the time he spoke to them." Reevey II, at 5. At the PCR hearing, Lyons testified that he could not recall much of what happened or his testimony at trial; he recalled seeing defendant with a woman "somewhere in Neptune" on the night of the murder. The PCR judge found Lyons' testimony to be "of little value."[2]

In his oral opinion after the hearing, the judge recounted defendant's PCR testimony, in particular, his asserted alibi for the crimes. There is an undated, signed alibi notice on Parinello's letterhead in the appellate record, in which defendant named Miles, and his cousin Aaron Mancle, as alibi witnesses. In his testimony at the PCR hearing, defendant claimed he was at his grandmother's house and then later with friends, including Josephine Rivera, across from his aunt's home. Defendant claimed that he asked trial counsel to create a timeline for events on the night of the murder. Defendant also claimed to have asked

---

[2] Defendant's decision to call Lyons as a witness at the PCR hearing is somewhat perplexing. Not only was his very brief PCR testimony of little value, but we also discounted the import of Lyons' pre-trial affidavit in Reevey II, at 24 ("Lyons' affidavit supplied nothing new, since he testified to having used embalming fluid for twelve hours before he provided the statement to police that implicated defendant, and he frequently stated during his testimony that he did not remember most of the details of an alleged conversation with defendant.").

Parinello to secure cellphone records showing the times of his calls to Rivera that would support the alibi.

Defendant testified that he gave all the documents in his possession to Parinello well in advance of trial, not the day before trial. He testified that he only met with Parinello once before trial began. Defendant asserted that he told Parinello he had no reason to steal the victim's Mercedes and had plenty of money because he was a drug dealer at the time of the murder; he claimed to have given Parinello bank statements and checks proving that he had no motive to steal the victim's car.

However, the PCR judge noted that given the time of the fatal shooting, the cellphone records and Rivera's testimony would not have definitively supported the alibi. Additionally, the judge concluded that Benoit tried but was unable to locate Rivera as part of his investigation. The judge did not address Miles' testimony.

The PCR judge said that Parinello was "the key witness in the hearing." Parinello had never tried a murder case before and was assigned to take over the defense approximately five months before trial. Parinello did not dispute that he turned over discovery to the prosecutor that he received from defendant just before trial began, and the PCR judge found that Parinello "justified the late

9

receipt of discovery because of his inability to visit the defendant every day in the County Jail." The PCR judge also found that Benoit's file contained Teasley's pre-trial statement and notes that indicated Teasley was willing to testify. Nonetheless, the judge found that Parinello "made a number of strategic decisions at trial specifically regarding which witness he was going to call." He further found that Parinello believed there were "credibility issues with many of these witnesses for various reasons. Thus, he made strategic decisions on how to go forward." As to the first issue we remanded for an evidentiary hearing, the PCR judge concluded that Parinello's decision not to call Teasley was a "justifiable strategic decision . . . [and] the first Strickland[3] prong was not satisfied."

The judge rejected defendant's claims that Parinello was only interested in having defendant plead guilty and failed to properly investigate his alibi and third-party guilt defenses. He entered an order denying the PCR petition, and this appeal followed.

## II.

Defendant contends that we should again remand the matter for a hearing before a different judge because the PCR judge "failed to abide" by the remand

---

[3] Strickland v. Washington, 466 U.S. 668, 687 (1984).

we ordered in <u>Reevey II</u>. Alternatively, defendant argues he succeeded on his IAC claims and is entitled to a new trial. In a pro se supplemental brief, defendant makes the same arguments and also contends his "post-trial newly-discovered evidence" satisfied the "three-prong <u>Carter</u>[4] test" to merit a new trial. We have considered these arguments and affirm.

The guideposts for our review are well-known. To establish a viable IAC claim, a defendant must establish both prongs of the test enunciated in <u>Strickland</u>, 466 U.S. at 687, and adopted by our Supreme Court in <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987). He must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Fritz</u>, 105 N.J. at 52 (quoting <u>Strickland</u>, 466 U.S. at 687). As to this prong, "there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]' [and t]o rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" <u>State v. Castagna</u>, 187 N.J. 293, 314 (2006) (quoting <u>Strickland</u>, 466 U.S. at 689). "If counsel thoroughly investigates law and facts, considering all possible options, his or her trial strategy is 'virtually

---

4  <u>State v. Carter</u>, 85 N.J. 300, 314 (1981).

unchalleng[e]able.'"  State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690–91).

Additionally, a defendant must prove he suffered prejudice due to counsel's deficient performance.  Strickland, 466 U.S. at 687.  A defendant must show by a "reasonable probability" that the deficient performance affected the outcome.  Fritz, 105 N.J. at 58.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).  This second prong is "far more difficult" to establish.  State v. Gideon, 244 N.J. 538, 550 (2021) (citing State v. Preciose, 129 N.J. 451, 463 (1992)).

"Our standard of review is necessarily deferential to a PCR court's factual findings based on its review of live witness testimony.  In such circumstances we will uphold the PCR court's findings that are supported by sufficient credible evidence in the record."  State v. Nash, 212 N.J. 518, 540 (2013).  However, "we need not defer to [the] PCR court's interpretation of the law" and review those determinations de novo.  Id. at 540–41 (citing State v. Harris, 181 N.J. 391, 415–16 (2004)).  Even when the PCR court conducts an evidentiary hearing, in limited circumstances, appellate courts may exercise original jurisdiction and

conduct a de novo review of the PCR court's factual findings. Harris, 181 N.J. at 420–21.

Critically, "[a] jury verdict that has been upheld on appeal 'should not be disturbed except for the clearest of reasons.'" Nash, 212 N.J. at 541 (quoting State v. Ways, 180 N.J. 171, 187 (2004)). "Therefore, at a PCR hearing, the burden is on the petitioner to establish his right to 'relief by a preponderance of the credible evidence.'" Ibid. (quoting Preciose, 129 N.J. at 459).

Our remand specifically required a potential evidentiary hearing in three areas: 1) defendant's IAC claim based on trial counsel's failure to call Teasley as a witness; 2) defendant's new trial motion based upon four post-trial affidavits from James Thomas, Ronald Strong, Johnathan Givens, and Calvin Weaver; and 3) possible IAC claims regarding defendant's two alibi witnesses and four people subpoenaed at the time of trial but never called as witnesses by trial counsel. Reevey II, at 25–28. Defendant contends the PCR judge did not "abide" by our remand instructions because he limited testimony at the PCR hearing "about newly discovered evidence" and refused to allow defendant to call various alibi and third-party guilt witnesses to testify.

We acknowledge some statements made by the PCR judge fuel defendant's argument that the judge misunderstood the scope of the remand. For

example, when defendant decided to represent himself and wished to call his father as a witness, the State objected, and the PCR judge attempted to ascertain who defendant intended to call as witnesses for the entirety of the hearing. Standby counsel indicated that "to the best of [his] ability," he tried "to reach out to" everyone on a list that defendant supplied. The judge acknowledged having been supplied with a list of "six witnesses," presumably in a letter sent by standby counsel that is in the appellate record. That letter states that the six individuals – Parinello, Scott, Teasley, Lyons, Sabrina Wright, and Edward Reevey, would all be appearing as witnesses, "based on [defendant's] request . . . to assist him in that regard." The letter further stated that Benoit would be unavailable as a witness for one month because he was out-of-state.

When defendant said he wished to "address some concern of the Appellate Division's decision," the judge said, "What we're doing here is an evidentiary hearing on the narrow scope of the issues that they outlined about what was or was not presented to Mr. Parinello, when it was presented to him and then I believe the post-trial affidavits, correct?" During defendant's testimony, the prosecutor objected when standby counsel asked defendant about "newly-discovered evidence" he claimed to have supplied Parinello in support of a new

14

trial motion. Standby counsel replied that it went to the poor relationship defendant had with Parinello. The judge sustained the objection, stating:

> But the problem is that's not what the scope of the appellate remand was. The whole issue was what Mr. Parinello did or did not do before the trial and whether or not the defendant gave him evidence day of or at some other point that Mr. Parinello could or could not utilize and whether or not it was violative of a prior court order or directive on mutual discovery.

While defendant contends these statements demonstrate the PCR judge misapprehended the scope of the remand, the PCR judge never limited defendant's ability to present evidence in the three areas we identified.

As to the first reason for our remand, as we noted, even though the trial judge excluded Teasley's affidavit and presumably would have excluded his testimony if called as a witness, a remand was necessary to determine whether Parinello's decision not to call Teasley as a witness demonstrated ineffective assistance of counsel. <u>Reevey II</u>, at 24. The PCR judge considered the testimony of Teasley, Parinello, Lyons, and defendant. He found that defendant did not give Parinello the pre-trial affidavits we identified in <u>Reevey II</u> — from Teasley, Kalvin Joseph, Wright, and Lyons — until shortly before trial.[5] The

---

[5] Wright was a co-defendant who testified against defendant at trial. <u>Reevey I</u>, at 7–8. We discussed the insignificance of her pre-trial affidavit and letters to defendant in <u>Reevey II</u>, at 23–24.

judge explicitly determined Parinello was credible and implicitly that defendant was not. We defer to those credibility determinations.

Additionally, the PCR judge found Teasley and Lyons were not credible. Lyons actually testified at trial, and we noted his pre-trial affidavit "supplied nothing new." Id. at 24. As for Teasley, the judge's credibility determination is of the utmost importance, because if an IAC claim is premised on counsel's failure to call a witness, one important factor a judge must "consider . . . [is] the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses." State v. L.A., 433 N.J. Super. 1, 16–17 (App. Div. 2013) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996)). In short, the PCR judge did not limit defendant's ability to produce evidence supporting his IAC claim as it related to Teasley and the other witnesses who supplied the pre-trial affidavits we referenced in Reevey II.

We defer to the PCR judge's findings based on his opportunity to see the witnesses and determine their credibility. Nash, 212 N.J. at 540. Based on those findings, the judge concluded that Parinello made a strategic choice not to call Teasley as a witness, and trial counsel's performance was not deficient. On this record, we see no reason to conclude otherwise.

A-5379-18

The second reason for our remand was to provide defendant with an opportunity to support his request for a new trial based on newly discovered evidence, i.e., the four post-trial affidavits. In his pro se supplemental brief, defendant contends he established grounds for a new trial based on this newly discovered evidence. However, defendant did not produce Thomas, Strong, Givens, or Weaver as witnesses at the PCR hearing. Nothing in the record evidences the judge's refusal to permit testimony from these witnesses. The point requires no further discussion in a written opinion. R. 2:11-3(e)(2).

That leaves the third reason for our remand, i.e., to permit defendant to pursue his IAC claim based on Parinello's failure to call certain subpoenaed witnesses. Our prior opinion referenced the lack of any certifications from the purported alibi witnesses named in defendant's pre-trial alibi notice, one of whom was Miles. Reevey II, at 27.

Defendant correctly notes that Miles testified before the first PCR judge many months before the evidentiary hearing continued before the second PCR judge, who never mentioned Miles in his oral opinion denying the petition. However, Miles' alibi testimony mirrored defendant's PCR testimony. The judge rejected defendant's testimony, finding that it did not preclude defendant's ability to have committed the crime. Moreover, exercising our original

jurisdiction, we also conclude that Miles' testimony was not credible; she was unsure whether she testified at defendant's trial when she clearly did not.

We also specifically remanded to permit defendant to produce four witnesses who trial counsel subpoenaed but never called as witnesses at trial. Id. at 27. Defendant sent the prosecutor a letter in November 2018, after he undertook his own representation, identifying a number of possible witnesses. Defendant's intention to call additional witnesses, other than those named in standby counsel's letter to the judge, was initially broached at the February 15, 2019 hearing, the first at which defendant was representing himself.

As the Court has noted, "[a] defendant's decision to proceed pro se may be fraught with risk." State v. Outland, 245 N.J. 494, 506 (2021) (quoting State v. King, 210 N.J. 2, 17 (2012)). At that hearing, defendant asked the judge if it was "a possibility that we can subpoena several witnesses for the next hearing?" The judge properly noted that the court did not subpoena witnesses. When defendant noted he had advised the prosecutor of the potential witnesses, the prosecutor correctly stated: "It's your obligation to subpoena them. You have standby counsel. You asked the court to represent yourself. . . . It's not our obligation. It's not our burden under the post-conviction relief law." Later in the same proceeding, the judge told defendant it was his obligation to subpoena

the witnesses for the hearing, and defendant acknowledged he understood. When the prosecutor, who had objected to defendant's father's testimony because of a lack of notice, asked if there were any "new witnesses," defendant responded, "No, they're the same witnesses."

Defendant was the last witness to testify at the three-day hearing and, after completing his testimony, the judge asked if that concluded all testimony. At that point, defendant asked for the opportunity to call his aunt, Robin Pickett, and Josephine Rivera, as witnesses. Although neither was named in the alibi notice defendant executed and served before trial, in his PCR testimony, defendant described how they would support his alibi.

Based on Benoit's testimony and records, the PCR judge found the investigator attempted to locate Rivera at the time of trial but was unsuccessful. Benoit's notes reflect that he did contact Pickett. The appellate record contains a 2016 affidavit from Rivera which corroborated defendant's version of events on the night of the murder. The appellate record does not contain any affidavit or certification from Pickett. The names of Pickett and Rivera were included in defendant's 2018 pro se letter to the prosecutor.

The judge denied defendant's request for additional time to call the two witnesses, stating they were not relevant to why "the Appellate Division sent it

back," specifically whether Parinello "had the information before, during the trial." The judge's statement represents a cropped understanding of our remand.

Nevertheless, neither Pickett nor Rivera was listed in standby counsel's letter to the PCR judge identifying those witnesses that defendant intended to call at the hearing. Nothing in the record indicates either Rivera or Pickett were ever subpoenaed or contacted to testify at the PCR hearing. More importantly, if Rivera's testimony was stated in the 2016 affidavit, it would not have mattered. As the PCR judge noted, defendant's testimony and that of Miles, failed to establish an alibi for the time of the shooting.

"A motion for an adjournment implicates a trial court's authority to control its own calendar and is reviewed under a deferential standard." State v. Miller, 216 N.J. 40, 65 (2013). After three days of testimony during which defendant was permitted to call numerous witnesses, including some not anticipated by our remand, denying a further adjournment so defendant could belatedly attempt to produce Pickett and Rivera as witnesses at the remand hearing was not reversible error. R. 2:10-2.

To the extent we have not specifically addressed any other arguments raised by defendant, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5379-18