**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0191-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEVIN BOONE,
a/k/a KEVIN N. BOONE,

     Defendant-Appellant.

_____

Submitted September 16, 2021 – Decided September 29, 2021

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 13-04-0518.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Patrick L. Harty, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kevin Boone appeals from a July 26, 2019 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Defendant was indicted on first-degree murder, N.J.S.A. 2C:11-3(a), second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), in connection with the 2012 shooting death of David Lewis. In 2015, defendant pled guilty, under a separate indictment, to a violation of probation relating to a prior two-year probationary sentence he received for a guilty plea to third-degree eluding. On the same date, he also pled guilty to third-degree aggravated manslaughter under the first indictment. In September 2015, defendant was terminated from probation, and sentenced on both indictments to an aggregate term of twenty years in state prison, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

By way of background, Lewis was gambling in an alleyway near a residence on East Paul Avenue in Trenton when he was shot and killed. The investigation was led by Trenton Police Detective Brian Jones. Jones received information from Detective Ryan Woodhead that a confidential informant

identified the shooter as "Quay". Defendant's mother also identified Quay as defendant's best friend.

An eyewitness identified the individuals gambling in the alley as Quay, defendant, and another male. The witness heard Quay tell defendant to "get a gun" and later discovered Lewis shot. A second witness, who was playing dice with Quay, heard him arguing with someone and heard shots, ran out of the alley, and got into a car Quay was driving. A third witness also heard the shots and saw people running from the alley, including defendant.

Jones interviewed another witness, David Wesley. Prior to doing so, Jones read Wesley his Miranda[1] rights and explained the definition of coercion to confirm Wesley understood his rights. Wesley confirmed he understood his rights and signed the Miranda waiver form. Wesley then stated he saw defendant shoot Lewis several times. Wesley and defendant got into Quay's car and Wesley heard defendant confess to shooting Lewis.

Before entering his plea, defendant filed a motion to suppress his statement to police relating to the Lewis shooting. The following facts were adduced at the suppression hearing at which Jones testified. The same day detectives interviewed Wesley, they located defendant and brought him to the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0191-19

police department for an interview. Prior to the interview, Jones inquired about defendant's level of education. Defendant stated he had a ninth-grade education, was "in special education" and could read "a little bit." Jones then read the Trenton Police Department Miranda Rights Form to defendant. Defendant confirmed he understood his rights, and Jones then read the waiver of rights portion of the form and explained the meaning of coercion. Defendant stated he understood the definition and his rights and signed the waiver form.

Detectives did not inform defendant he was a suspect in the homicide. During the interview, defendant denied shooting Lewis but placed himself at the scene of the shooting. He then asked for an attorney and the interview ended.

The motion judge issued a thirteen-page written opinion denying the motion. The judge found Jones credible. The judge determined defendant received a proper Miranda warning because he asked Jones to read it to him, confirmed he understood his rights and the waiver form, and signed the waiver. The judge distinguished defendant's case from State v. A.G.D., 178 N.J. 56 (2003) and State v. Nyhammer, 197 N.J. 383 (2009), noting "no criminal complaint or arrest warrant was issued against [d]efendant" at the time of his interview. The judge concluded because "[d]efendant was merely a suspect . . . detectives were not required to reveal to him their suspicions . . . ."

4

Applying the factors set forth in State v. Presha, 163 N.J. 304, 313 (2000), the trial judge concluded defendant's Miranda waiver was voluntary and uncoerced. The judge found as follows:

> At the time of his interview on July 24, 2012[,] [d]efendant was [nineteen] and a half years old since he was born on January 7, 1992. Defendant informed the detectives he had a ninth-grade education and had attended "special education" classes, offering he had trouble reading. However, in spite of any educational limitations [d]efendant may have, he was able to have a responsive and intelligent conversation with the detectives. Defendant's answers to the detectives' questions shows he has the intellectual capacity to understand his rights, and make a waiver. In addition to his involvement with this current matter, [d]efendant had extensive experience with the criminal justice system for someone of his age. Defendant had one prior juvenile arrest, and had been arrested twice as an adult prior to this interview. Defendant was no neophyte to the criminal justice system leading this court to find [d]efendant understood the detectives wanted to take statements to be used against him at trial.
>
> The court finds the detectives' questioning of [d]efendant at the police station for approximately one hour and [thirty-five] minutes from approximately 2:48 p.m. to 4:33 p.m. was not prolonged in nature and certainly did not involve any "physical punishment or mental exhaustion." Defendant was allowed to have a beverage, provided cigarettes, allowed to make a telephone call to his mother and girlfriend . . . .
>
> . . . .

A-0191-19

Examining the remainder of the [Presha] factors, and reviewing . . . the DVD of [d]efendant's interview, and considering [d]efendant's ability to have an intelligent and responsive conversation with the detectives, this court does not find [d]efendant was so mentally limited to prevent him from making a valid waiver.

. . . .

This court does not find any coercive techniques were used, and does not believe the [d]efendant's waiver was the product of coercion. All three detectives who questioned [d]efendant were polite and accommodating to [d]efendant. Defendant was provided a beverage and cigarettes, and his request to speak with his mother and girlfriend was honored.

In 2018, defendant filed a PCR petition and certification alleging trial counsel was ineffective

for failing to investigate and confirm that the State's main witness . . . Wesley was willing to state that he was coerced by the police into saying that [defendant] was the shooter. [Defendant] gave this information to his trial attorney and she failed to investigate and obtain a statement from . . . Wesley. Had trial counsel obtained that information, [defendant] certified that he would not have entered a guilty plea but would have proceeded to trial or obtained a more favorable plea bargain from the State.

. . . Additionally, trial counsel was ineffective for failing to distinguish . . . Nyhammer in the motion to suppress [defendant]'s statement to the police. Had trial counsel done so, [defendant]'s statement would have been suppressed. Had the statement been suppressed,

6

[defendant] certified that he would not have entered a guilty plea but would have proceeded to trial or obtained a more favorable plea bargain from the State.

Following oral argument, Judge Robert Bingham, II issued a comprehensive twenty-page written decision denying the PCR petition. He found defendant failed to overcome the presumption trial counsel's decision not to call Wesley was sound trial strategy and lacked a certification from Wesley stating he was coerced. The judge found the assertions in defendant's certification were disproved by the evidence in the record. He stated:

> Even if trial counsel had, in fact, obtained a statement from Wesley, defendant's assertion that he would not have entered a guilty plea would still rely on the assumption that (l) Wesley was in fact coerced and (2) would have given a statement to that effect. . . . But during his interview with . . . Jones, Wesley seemed to understand the meaning of coercion after Jones explained the term to him. He then signed the waiver and gave a statement, which undermine defendant's assertion that Wesley would have stated he was coerced. Furthermore, defendant's argument relies on mere speculation that the investigation of Wesley's statement to police would have resulted in a more favorable plea bargain from the State. This theory appears to disregard other witness statements and defendant's own statement to police.

The judge concluded defendant's contentions were conjectural, "bald assertions", and failed to establish an ineffective assistance of counsel.

7

Strickland v. Washington, 466 U.S. 668, 693 (1984); see State v. Fritz, 105 N.J. 42 (1987).

The judge also rejected defendant's argument his trial counsel was ineffective for failing to distinguish Nyhammer because defendant was not subject to a criminal complaint or arrest warrant and therefore police were not required to advise him that he was a suspect. The judge noted when detectives were interviewing defendant "[t]he State was still in the investigatory stage, as the evidence shows several witnesses had identified several individuals at the crime scene. Also, defendant having been read and having waived his Miranda rights, was aware what he said could be used against him." He concluded defendant did not show that if counsel had distinguished Nyhammer it would have led to suppression of his statement, a more favorable plea bargain, "or that [he would have] proceed[ed] to trial rather than entering a guilty plea."

Citing the motion judge's findings, Judge Bingham rejected defendant's argument that his level of education rendered the Miranda waiver invalid. He added the following:

> Defendant's limited education does not prevent his ability to give a knowing, intelligent, and voluntary waiver of his Miranda rights. A defendant's education level or intelligence is only one factor in determining whether there was a valid waiver of Miranda rights. Nor does involvement in special education or even mild

"[cognitively disabled]" automatically render a waiver invalid. State v. Carpenter, 268 N.J. Super. 378, 385 (App. Div. 1993). In Carpenter, the defendant had the mental capacity of a ten-year old child and a forensic psychiatrist testified that he was competent to stand trial but did not have the mental sophistication to understand Miranda warnings unless explained to him and broken down. Id. at 381-82. Nonetheless, the trial court properly found when looking at . . . all of the factors, that defendant knowingly and intelligently waived his Miranda rights. Id. at 386.

Defendant raises the following arguments on appeal:

> POINT ONE — THE PCR COURT ERRED IN DENYING [DEFENDANT'S] PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL EXPLAINING WHY SHE FAILED TO CONTACT AND INTERVIEW DAVID WESLEY, AS HE WOULD HAVE ADMITTED HE WAS COERCED BY POLICE TO SAY [DEFENDANT] WAS THE SHOOTER.

> POINT TWO — THE PCR COURT ERRED IN DENYING [DEFENDANT'S] PETITION FOR POST-CONVICTION RELIEF AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL TO EXPLAIN WHY SHE FAILED TO DISTINGUISH . . . NYHAMMER, . . . IN ARGUING FOR THE SUPPRESSION OF [DEFENDANT'S] STATEMENT TO POLICE.

We review a judge's denial of PCR without an evidentiary hearing de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018) (citing State v. Harris, 181 N.J. 391, 421 (2004)). To reverse a conviction based on

9

ineffective assistance of counsel, a defendant must demonstrate both: (1) "counsel's performance was deficient" and (2) counsel's "errors were so serious as to deprive the defendant of a fair trial . . . ." Strickland, 466 U.S. at 687; see Fritz, 105 N.J. at 58 (adopting the Strickland two-part test). Under the first prong, counsel's representation must be objectively unreasonable. State v. Pierre, 223 N.J. 560, 578 (2015). Under the second prong, a "reasonable probability [must exist] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 583 (quoting Strickland, 466 U.S. at 694).

The PCR court has discretion to determine whether a hearing is necessary to aid in its analysis. State v. Marshall, 148 N.J. 89, 157-58 (1997). If the court decides a defendant's allegations "are too vague, conclusory, or speculative to warrant an evidentiary hearing . . . then an evidentiary hearing need not be granted." Ibid. (citing State v. Preciose, 129 N.J. 451, 462-64 (1992)). "[A] petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance . . . [and] assert the facts that an investigation would have revealed . . . ." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Prejudice is not presumed.  Fritz, 105 N.J. at 52.  This is because there is a strong presumption trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

Having thoroughly reviewed the record pursuant to these principles, we affirm for the reasons set forth in Judge Bingham's opinion.  The record does not establish a prima facie showing of ineffective assistance of counsel to grant either an evidentiary hearing or post-conviction relief.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0191-19