# RECORD IMPOUNDED

---

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3040-22

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

B.K.,[1]

 Defendant-Appellant.

_____

Submitted October 29, 2024 – Decided November 4, 2024

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Indictment No. 14-10-0307.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Frank J. Pugliese, Designated Counsel, on the brief).

Renee M. Robeson, Hunterdon County Prosecutor, attorney for respondent (Tina M. Difranco, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials in this matter to protect the confidentiality of multiple victims. <u>Rule</u> 1:38-3(b)(12).

PER CURIAM

Defendant appeals the court's order denying his petition for post-conviction relief (PCR). After a jury convicted defendant of: two counts of first-degree aggravated sexual assault contrary to N.J.S.A. 2C:14-2(a)(1); one count of first-degree aggravated sexual assault contrary to N.J.S.A. 2C: 14-2(a)(2); five counts of second-degree sexual assault contrary to N.J.S.A. 2C: 14-2(b); and two counts of second-degree endangering the welfare of a child contrary to N.J.S.A. 2C:24-4(a).

Defendant was sentenced to an aggregate term of forty-five years, with a minimum period of parole ineligibility of thirty-seven years, fifteen months, and five days subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On direct appeal, we affirmed the judgment of conviction. Defendant filed a PCR petition, which the court denied without an evidentiary hearing.

On appeal, defendant argues that trial counsel was ineffective by: failing to call witnesses; failing to prepare defendant prior to his testimony at trial; and failing to establish that a witness, B.G., was not a biological relative. Defendant also argues appellate counsel was ineffective by failing to appeal the trial court's denial of defendant's suppression motion. Defendant further contends that

cumulative error denied him a fair trial. For the reasons which follow, we affirm.

## I.

We incorporate the facts and relevant procedural history from our opinion affirming defendant's conviction and sentence, State v. B.K.K, No. A-3476-16 (App. Div. June 17, 2020) (slip op. at 3-11), certif. granted, 244 N.J. 262 (2020). We recite the salient combined facts and history from our opinion:

> In 2013, J.R. and K.R. lived with defendant, their mother, their brother, and defendant's son. According to J.R., she was watching television late one evening while her mother, sister, and brother were in the house sleeping, when defendant sat next to her on the couch. Defendant then put his hands down J.R.'s pants, and digitally penetrated her vagina while he masturbated. J.R. stated this went on for about twenty or twenty-five minutes. She never told anyone about that incident at the time because defendant told her he would go to jail if she told anyone what happened, she knew defendant made her mother happy, and she was afraid her family would be ruined if she disclosed.

> J.R. recalled two other instances when defendant sexually assaulted her. Once while she was lying on the couch late at night, half asleep, defendant walked in, sat next to her, and turned her over onto her back. J.R. attempted to resist, but defendant would not stop. He removed her pants and her underwear, and [he] performed an act of cunnilingus. On another occasion in the middle of the afternoon, defendant unzipped J.R.'s jeans while she was laying on the couch and digitally penetrated her vagina.

3

. . . .

After this last incident, J.R. texted her mother and her thirteen-year-old friend, disclosing that defendant assaulted her.

. . . .

[O]n July 2, 2014, K.R. told J.R. that defendant had assaulted her. In response, J.R. revealed that defendant had done the same thing to her.

. . . .

According to Detective Donna Snyder of the Hunterdon County Prosecutor's Office, she received a phone call on July 3, 2014 that J.R. and K.R. had been sexually assaulted. . . . The children were brought from the prosecutor's office to the Child Advocacy Center, where Snyder interviewed them. As part of this interview, K.R. disclosed that on July 2, 2014, defendant touched her vaginal area. J.R. stated that defendant had abused her several times beginning in the summer of 2012.

. . . .

Defendant voluntarily appeared for an interview at the prosecutor's office on July 3, 2014. Defendant denied his stepdaughters' allegations.

. . . .

Defendant was arrested and charged with various offenses relating to his alleged sexual assault of his stepdaughters. On October 30, 2014, a Hunterdon County Grand Jury returned an indictment charging defendant with: two counts of first-degree aggravated

4

sexual assault contrary to N.J.S.A. 2C:14-2(a)(1); one count of first-degree aggravated sexual assault contrary to N.J.S.A. 2C:14-2(a)(2)(c); two counts of second-degree sexual assault contrary to N.J.S.A. 2C:14-2(b); two counts of second-degree sexual assault contrary to N.J.S.A. 2C:14-2(c)(1); one count of second-degree sexual assault contrary to N.J.S.A. 2C:14-2(c)(4); and two counts of endangering the welfare of a child contrary to N.J.S.A. 2C:24-4(a).

[Before] trial, the court addressed several motions . . . . One motion led to a [suppression] hearing on . . . defendant's pretrial statement to law enforcement, which the trial court denied. The State filed a motion to introduce testimony from B.G., defendant's niece, about defendant having sexually assaulted her from when she was eleven until she was eighteen under N.J.R.E. 404(b). On August 2, 2016, the trial court conducted a Rule 104 hearing, heard testimony from B.G., and on August 16, 2016, the court [denied] the State's motion to admit evidence of defendant's sexual assault of B.G. in its case-in-chief under N.J.R.E. 404(b). However, the court reserved its determination about whether the State could admit such evidence "if and when a material issue in dispute [was] raised which opens the door to permissible rebuttal evidence."

On November 15, 2016, the trial judge considered the State's motion to admit expert testimony from Dr. Vincent D'Urso, an authority on CSAAS.[2]

---

[2] On direct appeal, we concluded that although Dr. D'Urso's testimony regarding Child Sexual Abuse and Accommodation Syndrome (CSAAS) was admitted into evidence in error, said error was harmless given the overwhelming evidence against the defendant. See State v. B.K.K., A-3476-16 (App. Div. Dec. 24, 2020) (slip op. at 2), certif. denied, 245 N.J. 583 (2021).

After conducting a <u>Rule</u> 104 hearing, the court granted the motion.

[At trial], J.R. testified to the above assaults and to two more occasions where defendant sexually abused her by digitally penetrating her—including one instance where others were present in the home.

K.R. also testified at trial. . . . According to K.R., she was sitting on the couch when defendant sat next to her and began massaging her back. He gradually moved his hands down her back and then inside her pants when he started touching her vagina before digitally penetrating her.

. . . .

The victims' mother, defendant's wife, testified at trial for the State.

. . . .

[A]t her plea hearing she testified that she believed that defendant had assaulted her daughters. The mother also testified to a phone call she received from defendant in which he told her he "fucked up," that he was sorry, and could not "help it."

. . . .

Defendant also testified at trial. He stated that the two girls fabricated their testimony at their father's direction. . . . When he was asked if he ever sexually assaulted J.R., defendant replied that he "never sexually assaulted anyone." He also denied assaulting K.R. Moreover, he denied that he was ever alone with them[] but admitted to sometimes giving them massages. As to the phone call he made to his wife, he explained that

A-3040-22

it referred to his decision to not take a polygraph test when it was offered by the prosecutor.

Thereafter, the State renewed its <u>Rule</u> 404(b) motion to allow B.G to testify, arguing that defendant opened the door for her testimony's admission. The court concluded that under <u>Rule</u> 404(b), B.G.'s testimony of the prior assaults against her was admissible to rebut defendant's claims of fabrication, vendetta, and lack of feasibility/opportunity and to rebut defendant's opening the door. The judge allowed the testimony, but ordered that it be "sanitized" so as to mitigate the prejudicial effect of the details of defendant's assault on B.G. that were not similar in nature to the assaults on J.R. and K.R.

After the defense rested, but before B.G. testified, the trial court delivered a limiting instruction to the jury about their use of B.G.'s testimony in their deliberations. B.G., who was then twenty-four years old, testified to defendant sexually assaulting her on several occasions beginning at the age of eleven, in 2003, until she was fourteen, while other family members were home, in a manner similar to what J.R. and K.R. described in their testimony. She also described how defendant told her not to tell anyone about what he was doing because he would be sent to jail.

. . . .

Defendant . . . testified in rebuttal to B.G.'s testimony. . . . Defendant denied sexually assaulting B.G. . . . Defendant testified that he had sex with B.G. two or three times after she turned eighteen.

_____

[*] Before defendant's trial, the victims' mother pled guilty to charges of child abuse, child endangerment,

and witness tampering in connection with this matter. She faced up to nineteen years in prison, but under a plea agreement the State would recommend five years' probation if she testified truthfully at defendant's trial.

[State v. B.K.K, No. A-3476-16 (App. Div. June 17, 2020) (slip op. at 3-11), certif. granted, 244 N.J. 262 (2020)].

On direct appeal, defendant argued the trial court erred by: admitting improper propensity evidence including B.G.'s testimony; admitting expert testimony about Child Sexual Abuse and Accommodation Syndrome (CSAAS) in light of the Court's holding in State v. J.L.G., 234 N.J. 265 (2018); and by imposing a sentence which violated Yarbough principles.[3] We affirmed defendant's conviction and sentence.[4]

Defendant's PCR petition alleged trial counsel was ineffective by: failing to establish on the record that B.G. was not his biological relative; failing to call certain witnesses to both support his defense and his character; failing to prepare defendant for his testimony at trial; and failing to move for the psychological

---

[3] State v. Yarbough, 100 N.J. 627 (1985).

[4] The Supreme Court remanded defendant's conviction for reconsideration in light of the Court's opinion in State v. G.E.P., 243 N.J. 362 (2020); State v. B.K.K., 244 N.J. 262 (2020). On remand we affirmed, and the Court denied certification. State v. B.K.K., A-3476-16 (App. Div. Dec. 24, 2020), certif. denied, 245 N.J. 583 (2021).

examination of the victims. He also argued that appellate counsel was ineffective for failing to appeal the denial of his suppression motion. Defendant also claimed cumulative error, arguing trial counsel: waited until closing to address J.R.'s allegation that defendant showed up at her job; failed to object to improper hypotheticals posed to Dr. D'Urso; failed to attack the credibility of [victims' biological father]; failed to move for a change of venue; failed to obtain J.R. and K.R.'s medical records; and failed to obtain additional interviews of J.R.

The PCR court denied the petition without an evidentiary hearing, making findings in its fifty-four-page written statement of reasons.

The PCR court found the record showed defendant's claims of ineffective assistance of counsel during pretrial preparation were bald, unsupported allegations. The court found defendant failed to state what details counsel failed to review with him, nor did defendant show how further preparation would have affected his testimony.

Next, the PCR court found defendant did not receive ineffective assistance of counsel at trial. First, it found meritless defendant's argument regarding B.G.'s relationship to him. The court found the record clearly showed B.G. was

not defendant's biological niece because defendant testified at trial about "the exact legal nature of his relationship with B.G."

The PCR court then made findings on counsel's election to not call certain witnesses.[5] Regarding J.R.'s former boyfriend's mother, the court found her testimony "would not have provided any context, nor would it have constituted an admission of fabrication of sexual assault against the petitioner." Finding the decision to not call defendant's co-worker about his use of sick time a strategic one, the court stated, "[defendant] has not met his burden of demonstrating that [defendant's co-worker's] proposed testimony . . . would have had a substantial impact on the outcome." Regarding defendant's son, the PCR court found defendant failed to show how his proposed testimony would have substantially impacted the outcome of the trial.

Finally, the PCR court addressed trial counsel's failure to call character witnesses. It found "none of the proposed character witnesses would have substantially impacted the outcome of the trial in light of the overwhelming evidence of petitioner's guilt."

---

[5] We do not name the potential witnesses that defendant argues counsel should have called to testify at trial in this opinion. Instead we describe them, to prevent inadvertent disclosure of the victims' identities. R. 1:38-3(b)(12).

A-3040-22

The PCR court next considered defendant's ineffective assistance of counsel (IAC) claims regarding appellate counsel, again making findings. It found his argument was without merit, reasoning that defendant "proffers bald and unsubstantiated assertions his counsel was ineffective but offers no reasoning supported by law why the Miranda[6] denial should have been raised on appeal or why the trial court's decision was in error."

Finally, the court found no cumulative error, making findings on each of the six purported errors and explaining why the alleged errors were meritless. The court noted that even if the errors demonstrated prima facie ineffective assistance, the trial outcome would not have been different.

The PCR court determined that defendant was not entitled to an evidentiary hearing, as he failed to establish a prima facie claim that he received ineffective assistance of counsel before his trial, during his trial, or on appeal.

Defendant now appeals.

## II.

"Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

11

N.J. Super. 326, 338-39 (App. Div. 2020) (citing State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018)).

In order to establish a prima facie claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 52 (1987) (adopting Strickland). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688, 694).

III.

We conclude defendant's claims for post-conviction relief are meritless, and we affirm the PCR court's order denying post-conviction relief without a hearing, substantially for the reasons expressed by the Honorable Angela F. Borkowski, J.S.C. in her comprehensive and cogent fifty-four-page written statement of reasons. We add the following brief comment.

Defendant argues he did not receive effective assistance of counsel at trial. He specifically contends that there were several witnesses who could have

12

supported his defense—that the accusations against him were fabricated. He also points out that there were several character witnesses that should have been called.

"Courts defer to a trial counsel's decisions regarding the calling of witnesses to testify during trial." State v. Arthur, 184 N.J. 307, 321 (2005); see also State v. Pierre, 223 N.J. 560, 579 (2015) (recognizing the difficulty of determining which witnesses to call and holding a court should defer to a defense counsel's decision whether to call a witness). "Determining which witnesses to call . . . is one of the most difficult strategic decisions that any trial attorney must confront . . . [t]herefore . . . a court's review of such a decision should be 'highly deferential.'" Arthur, 184 N.J. at 320–21 (quoting Strickland, 466 U.S. at 689).

Defendant has failed to show a "reasonable probability that, but for" trial counsel's failure to call J.R.'s former boyfriend's mother, defendant's co-worker, or his son, the outcome of the trial would have been different. Defendant only posits theories on how the proposed witnesses would have testified, offering no facts to support the theories. That said, trial counsel did call fact witnesses who testified for the defense, and the jury found their testimony unpersuasive. We defer to the trial strategy of counsel in deciding which witnesses to call at trial,

184 N.J. at 321, and we also conclude that the speculative testimony defendant posits those witnesses would have offered would not have substantially impacted the trial outcome. 473 N.J. Super. at 455.

We briefly address defendant's claim that trial counsel was ineffective by not preparing him sufficiently to testify in his own defense. He contends that counsel should have reviewed with him in advance the intended direct examination questions and should have also discussed the significance of the court's prior evidential ruling barring B.G.'s testimony.

While on the stand, trial counsel asked defendant, "did you ever sexually assault [J.R.]?" Defendant answered: "Never. I never sexually assaulted anyone." Defendant opened the door to B.G.'s testimony about what she alleged defendant had done to her, testimony that the trial court had previously found inadmissible. Trial counsel admitted in a statement to PCR counsel's investigator that "the judge and prosecutor's perspective of opening the door was bigger than his and if he would've understood how broad the judge['s] perspective was, he would've advised [defendant] not to testify regardless of his right to." Given counsel's admission, we conclude their performance fell below an objective standard of reasonableness—satisfying Strickland's first prong. However, defendant has not shown that this error substantially changed the

outcome of the trial. As the trial court noted in granting the State motion to reconsider B.G.'s 404(b) evidence, "the door was not opened by defendant's testimony alone," but also "through the cross-examination of the victims and other witnesses." The record shows the trial court directed counsel to sanitize B.G.'s testimony, and ultimately provided an appropriate limiting instruction to the jury. There is sufficient support in the record for us to conclude that defendant was unable to satisfy prong two of Strickland. 466 U.S. at 687.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3040-22